840 F.2d 208
 Peter M. STERN, Appellant,
v.
Honorable Robert N.C. NIX, Jr., Individually, and as Chief
Justice of the Supreme Court of Pennsylvania; Honorable
Rolf Larsen, Individually, and as a Justice of the Supreme
Court of Pennsylvania; Honorable John P. Flaherty,
Individually, and as a Justice of the Supreme Court of
Pennsylvania; Honorable James T. McDermott, Individually,
and as a Justice of the Supreme Court of Pennsylvania;
Honorable William D. Hutchinson, Individually, and as a
Justice of the Supreme Court of Pennsylvania; Honorable
Stephen A. Zappala, Individually, and as a Justice of the
Supreme Court of Pennsylvania; and Honorable Nicholas P.
Papadakos, Individually, and as a Justice of the Supreme
Court of Pennsylvania, Appellees.
 No. 87-1519.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 5, 1988.
Decided Feb. 29, 1988.
 
 Arthur W. Lefco (argued) (Harold Cramer, Alan C. Milstein, and Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., on the brief), for appellant.
 Howland W. Abramson (argued) (Charles W. Johns, Philadelphia, Pa., on the brief) for appellees.
 Before TIMBERS, WINTER and ALTIMARI, Circuit Judges*.
 OPINION OF THE COURT
 TIMBERS, Circuit Judge:
 
 
 1
 Appellant Peter M. Stern, a former member of the Pennsylvania bar until he was disbarred by the Supreme Court of Pennsylvania, appeals from a judgment entered August 17, 1987 in the Eastern District of Pennsylvania, Marvin Katz, District Judge, denying Stern's application to stay the order of the Supreme Court of Pennsylvania which disbarred him. Appellees are the Honorable Robert N.C. Nix, Jr., Chief Justice of the Supreme Court of Pennsylvania, and the six other Justices of that Court.
 
 
 2
 On appeal, Stern claims that the Supreme Court of Pennsylvania violated his right to due process under the Fourteenth Amendment because the court substituted its own findings for those of a disciplinary hearing committee. Appellees, aside from other arguments, assert that the district court, under the doctrine of Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1982), lacked subject matter jurisdiction.
 
 
 3
 We will enter a judgment ordering that the district court judgment be vacated and that the case be remanded with instructions to dismiss the complaint.
 
 I.
 
 4
 We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.[1]
 
 
 5
 Stern was admitted to the Pennsylvania bar on November 21, 1966. In 1980, the year in which the incidents underlying his disbarment took place, Stern had been a partner in the Philadelphia firm of Blank, Rome, Comisky & McCauley ("BRCM") since 1972. One of BRCM's clients, for which Stern was responsible, was the Frankford Quaker Grocery Company ("Frankford Quaker").
 
 
 6
 Frankford Quaker began having difficulty with its employees when layoffs resulted in work slow-downs and retaliatory vandalism. Frankford Quaker approached Teamsters Union, Local 500 (the union representing its employees), with a request that it control its members. When the union refused to cooperate, Frankford Quaker "pressured" Stern into "carrying" $5,000 to the President of the Union, William O'Farrell. Stern initially refused because he believed it would be an illegal "pay off". Nevertheless, when Frankford Quaker threatened to dismiss him as its attorney, Stern agreed to deliver the money and did so.
 
 
 7
 The first time Stern approached O'Farrell the union president refused to accept any money. Stern asserts that O'Farrell said he would make no concessions in consideration of any payment. When Stern returned to Frankford Quaker he was told to deliver the money anyway "couched in terms of a Christmas gift", as Stern put it. This time, O'Farrell accepted the money. According to Stern, O'Farrell made it clear that he would not be influenced in any way by the funds. Stern says that he believed the money actually was a gift. Indeed, the retaliating employees did not change their behavior.
 
 
 8
 In early 1982, the Federal Bureau of Investigation ("FBI") began to investigate O'Farrell's extortion activities. Upon learning of Stern's dealings with O'Farrell, the FBI requested the Justice Department to inform the Disciplinary Board of Stern's involvement with O'Farrell. The Department did so.
 
 
 9
 On January 14, 1985, the Disciplinary Counsel of the Disciplinary Board filed a petition for discipline against Stern. The Disciplinary Counsel charged him with violations of various Pennsylvania Disciplinary Rules of the Code of Professional Responsibility ("DR"). Specifically, he was charged with violating DR 1-102(A)(3) (prohibiting lawyers from engaging in illegal conduct involving moral turpitude); DR 1-102(A)(4) (prohibiting lawyers from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); DR 1-102(A)(6) (prohibiting lawyers from engaging in conduct adversely reflecting on their fitness to practice law); and DR 7-102(A)(7) (prohibiting lawyers from counseling or assisting clients in conduct they know to be fraudulent or illegal).
 
 
 10
 In September 1985, Stern and the Disciplinary Counsel entered into a comprehensive stipulation of facts, in which Stern stipulated, among other things, that he had violated DR 7-102(A)(7).
 
 
 11
 The Hearing Committee ("Hearing Committee") of the Disciplinary Board held an evidentiary hearing on September 26, 1985. The Hearing Committee filed its report on February 27, 1986, including findings of fact and conclusions of law. The report recommended, first, dismissal of the charges brought under DR 1-102(A)(3), (4) and (6); and, second, a private informal admonition or private reprimand (two relatively lenient sanctions) with respect to the charges brought under DR 7-102(A)(7). The Hearing Committee explicitly found that, when Stern made the $5,000 payment to O'Farrell, neither Stern nor his client, Frankford Quaker, expected to influence O'Farrell. The Hearing Committee stated, "[w]e find that the payor's (i.e. [Stern's] and/or his client['s] intent was to make a gift and not buy a result."
 
 
 12
 The Board reviewed the Hearing Committee's report and the record. On July 7, 1986, the Board concluded that Stern should receive the more serious sanction of public censure. It stated that it found incredible Stern's assertion that the $5,000 was given without the hope of influencing O'Farrell. Moreover, it stated that there was no doubt that Stern "knowingly delivered the questioned payment" and that the payment violated the law.
 
 
 13
 On October 9, 1986, the Supreme Court of Pennsylvania ordered Stern to show cause why he should not be disbarred. Stern requested a hearing and oral argument. On November 10, 1986, the Supreme Court denied the request for a hearing, but granted the request for oral argument. Stern and the Disciplinary Counsel submitted briefs. The Disciplinary Counsel requested that Stern not be disbarred. The Supreme Court heard oral argument on January 29, 1987.
 
 
 14
 In a judgment entered June 3, 1987, the Supreme Court ordered Stern disbarred. The Supreme Court stated that it had independently reviewed the record, pursuant to a Pennsylvania law that provides that in disciplinary matters the Supreme Court is not bound by the findings of fact of the trier of fact and may evaluate the evidence itself. See Office of Disciplinary Counsel v. Keller, 509 Pa. 573, 579-80, 506 A.2d 872, 875 (1986). The Supreme Court concluded that no credible evidence supported the Hearing Committee's finding that Stern did not intend to bribe O'Farrell. It further concluded that Stern did intend the $5,000 as a bribe.
 
 
 15
 On June 17, 1987, Stern commenced the instant action pursuant to 42 U.S.C. Sec. 1983 (1982) in the Eastern District of Pennsylvania. He sought a temporary restraining order, a preliminary injunction, and a permanent injunction. He sought a stay of the state court order disbarring him. He asserted that, since the Supreme Court allegedly had rejected the findings of fact of the Hearing Committee and had substituted its own findings on matters of credibility, it should have granted him a further evidentiary hearing.
 
 
 16
 On June 19, 1987, the district court entered its order denying a temporary restraining order. On June 29, 1987, after holding a hearing, the district court entered its order denying a preliminary injunction, holding that the Supreme Court had not substituted its judgment on matters of credibility. The district court held (1) that Stern's likelihood of success on the merits was slim; and (2) that the benefit of preserving the integrity of the bar outweighed the harm to Stern, even though that harm was serious. Prior to entering judgment, the district court denied the motion by counsel for the Justices of the Supreme Court to dismiss the action on the grounds of lack of subject matter jurisdiction and issue and claim preclusion.
 
 
 17
 Stern appealed to our Court from the district court's order of June 26, 1987. He filed a motion in our Court to stay the state court order pending appeal. On July 2, 1987, we denied the motion. After Stern withdrew his initial appeal and requested a remand to the district court, we dismissed his appeal on August 10, 1987 for failure to prosecute under Fed.R.App.P. 42(b). On August 17, 1987, the district court entered judgment denying Stern's application to stay the Supreme Court's order disbarring Stern. From the judgment the instant appeal was taken.
 
 
 18
 For the reasons stated below, we vacate the judgment of the district court and remand to that court with instructions to dismiss the complaint.
 
 II.
 
 19
 Congress has provided that "[f]inal judgments or decrees rendered by the highest court of a State ... may be reviewed by the Supreme Court...." 28 U.S.C. Sec. 1257 (1982). The Court in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), squarely held that Sec. 1257 provides that only the Supreme Court may review decisions of the highest court of a state. "[N]o court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment...." Id. at 416. The Court reaffirmed its Rooker holding in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983), stating that a district court has "no authority to review final judgments of a state court in judicial proceedings" and "[r]eview of such judgments may be had only in this Court." Id. at 482. The Feldman Court stated, however, that a district court would have subject-matter jurisdiction over "general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case." Id. at 486. A district court "may simply be asked to assess the validity of a rule promulgated in a nonjudicial proceeding." Id. The Court emphasized, however, that a district court still does not have jurisdiction over "challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." Id. (emphasis added). It is undisputed that the instant case arises out of a judicial proceeding.
 
 
 20
 Having drawn this distinction between general and particular challenges, the Feldman Court also stated that a particular challenge would not be saved by the mere fact that the plaintiff had failed to raise the constitutional challenge in the state court; and that, as a result, the state court never adjudicated the issue and Supreme Court review therefore would be unavailable. The Fifth Circuit had reasoned, in Dasher v. Supreme Court of Texas, 658 F.2d 1045 (5th Cir.1981) (cited in Feldman, 460 U.S. at 482 n. 16). cert. denied sub nom. Howell v. State Bar of Texas, 466 U.S. 950 (1984), that, since Supreme Court review would be unavailable and the state court had not adjudicated the federal issue, the district court would have jurisdiction over the constitutional claims in such a case. The Feldman Court, however, stated that "[i]f the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the district court is in essence being called upon to review the state-court decision. This the district court may not do." Feldman, supra, 460 U.S. at 482 n. 16. "By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court." Id. (emphasis added).
 
 
 21
 The jurisdictional issue in the instant case turns upon whether Stern's constitutional challenge to the actions of the Supreme Court of Pennsylvania should be viewed as a "general challenge" or a challenge to a state court decision in a "particular case". As the Tenth Circuit observed in Razatos v. Colorado Supreme Court, 746 F.2d 1429, 1433 (10th Cir.1984), cert. denied, 471 U.S. 1016 (1985), the line between the two "is often difficult to draw."
 
 
 22
 In order to resolve this issue, we first must determine just which state court rule or rules Stern has challenged--a matter left less than clear in Stern's briefs. The record as a whole indicates that Stern has challenged the combined effect of two state court rules: (1) the court-made rule that review of attorney discipline hearings by the Supreme Court of Pennsylvania is de novo and that during such review the Supreme Court is not bound by the findings of either the Hearing Committee or the Disciplinary Board, see Keller, supra, 509 Pa. at 579-80, 506 A.2d at 875; and (2) the Pennsylvania Rule of Disciplinary Enforcement that provides attorneys facing disciplinary charges with the right to oral argument before the Supreme Court of Pennsylvania, see Pa. R.D.E. 208(e)(3), but makes no provision for an evidentiary hearing before the Supreme Court. These two rules together allow the Supreme Court to reject the findings of the Hearing Committee and the Disciplinary Board on a "cold record", i.e., without affording the attorney an evidentiary hearing before it. It is this rule or practice which Stern challenges.
 
 
 23
 In the instant case, a cursory examination of the introduction to the complaint suggests that Stern is mounting a general challenge to this rule or practice, for the complaint opens by stating that the purpose of the action is "not to seek direct review of the action of the Justices of the Supreme Court of Pennsylvania but rather to assert a generalized challenge to the constitutionality of these rules and procedures." Despite this genuflecting to the Rooker-Feldman doctrine, closer consideration convinces us that Stern's complaint is simply a skillful attempt to mask the true purpose of the action, which essentially is to reverse the judicial decision of the Supreme Court of Pennsylvania, in contravention of Rooker-Feldman.
 
 
 24
 In his complaint, Stern demands a declaratory judgment and a permanent injunction restraining the Supreme Court of Pennsylvania from disbarring him and other similarly situated attorneys unless the Supreme Court, in any case in which it plans to reject the findings of the Hearing Committee (which of course would include Stern's case), first grants an evidentiary hearing to the attorney. This demand for a permanent injunction, while drafted to sound like a remedy for a general challenge, is in itself problematic. In a sense, any attempt to enjoin the enforcement of a state court judgment, even conditionally, as in this case, is suspect. If it granted Stern's requests, the federal court would effectively reverse the state court judgment, and thus "review [a] final judgment[ ] of a state court in judicial proceedings", contrary to Rooker-Feldman.
 
 
 25
 The fact that Stern also purports to act on behalf of other similarly situated attorneys (who probably are few in number since the class would be limited to those attorneys who face rejection of the Hearing Committee's findings by the state court) does not change the fact that he is essentially seeking reversal of his own judgment. Moreover, as the proceedings continued, the veneer of the "general challenge" became increasingly thin.[2] Stern moved for a temporary restraining order and a preliminary injunction, both of which required him to demonstrate the likelihood of success on the merits and irreparable harm to himself, thus shifting the focus to the actions of the Supreme Court of Pennsylvania in his particular case. The complaint and the stipulation of facts contained extensive exposition of the specific facts in Stern's case, which hardly would have been necessary if the district court were being asked only to "assess the validity" of the rule in its general application. By the time of his appellate briefs, Stern had become completely focused on his own case. In his brief headings Stern asserted that in disbarring him, the Supreme Court, pursuant to its rules and procedures, rejected the Hearing Committee's findings and that as a result "the Supreme Court violated Stern's right to due process of law" (emphasis added). Dropping the reference to other "similary situated" attorneys, Stern, in the conclusion to his brief, requested an order "permanently enjoining the Supreme Court of Pennsylvania's Order disbarring Stern from the practice of law."[3]
 
 
 26
 In short, a close examination of Stern's case demonstrates that, despite his attempt to draft his complaint in the form of a general challenge to a state court rule, he in reality is seeking review of a state court judgment in his particular case. This does not pass muster under Rooker-Feldman. It requires dismissal of the complaint.
 
 III.
 To summarize:
 
 27
 We hold that under the Rooker-Feldman doctrine the district court lacked subject matter jurisdiction. We will enter a judgment ordering that the district court judgment be vacated and that the case be remanded with instructions to dismiss the complaint.
 
 
 28
 We order that the mandate issue forthwith.
 
 
 
 *
 This panel of Second Circuit judges is sitting as a panel of the Third Circuit pursuant to designation and assignment by the Chief Justice of the United States, 28 U.S.C. Secs. 291(a) and 294(d) (1982), following certification by the Chief Judge of the Third Circuit that there is a necessity for the designation and assignment of judges of another circuit to perform duties as a panel in the Third Circuit, all the judges of the Third Circuit having recused themselves on the instant appeal
 
 
 [1]
 This summary of the facts is based in part on a stipulation of facts entered into between Stern and the Chief Disciplinary Counsel ("Disciplinary Counsel") of the Disciplinary Board ("Disciplinary Board" or "Board") of the Supreme Court of Pennsylvania in September 1985. See p. 210 infra
 
 
 [2]
 For this reason, Razatos, supra, does not help Stern. In Razatos, the plaintiff requested only declaratory relief and a hearing, not an injunction, 746 F.2d at 1430, and, in contrast to Stern, maintained the general nature of his challenge throughout the proceedings. Id
 
 
 [3]
 The fact that Stern did not raise his constitutional claims in the state court does not change the analysis. As stated above, Feldman held that failure to raise constitutional claims in the state court means only that the plaintiff may have waived his right to raise those claims in any federal court. See supra p. 211