Dennis **KIRBY, et al., Plaintiffs,**

v.

**CITY OF PHILADELPHIA,**
**et al., Defendants.**

**Civ. A. No. 94–CV–2627.**

United States District Court,
E.D. Pennsylvania.

Sept. 29, 1995.

A. Martin Herring, A. Martin Herring & Assoc., Philadelphia, PA, Richard Kirschner, Richard Kirschner & Associates, Washington, DC and Deanna Kaplan Tanner, Herring and Herring, Philadelphia, PA, for Plaintiffs.

Anne Barden, City of Philadelphia Law Dept., Philadelphia, PA, for Defendants.

## MEMORANDUM ORDER

ANITA B. BRODY, District Judge.

Plaintiffs brought this action pursuant to 42 U.S.C. §§ 1983 and 1985 for an alleged violation of their constitutional right to equal protection. I hold that plaintiffs' case is in essence a disguised appeal from state court and therefore dismiss it in accordance with the Rooker–Feldman doctrine.

## I. BACKGROUND

Plaintiffs are former City of Philadelphia police officers who were separated from the police department between 1991 and 1992 after incurring permanent partial disabilities resulting from injuries on the job. The City informed plaintiffs upon retirement that they were not entitled to compensation for accrued, unused vacation time, despite the fact that an arbitrator had held otherwise during the grievance arbitration of a different disabled police officer in 1989.[1] (Am.Compl. ¶ 58.) In accordance with the collective bargaining agreement between the City of Philadelphia and the Fraternal Order of Police ("FOP"), the FOP brought a grievance arbitration proceeding in 1993 on behalf of plaintiffs and other permanently partially disabled police officers. (Am.Compl. ¶ 59.)

The arbitrator found that plaintiffs were not entitled to compensation for accrued, unused vacation time under the collective bargaining agreement, despite the previous arbitrator's contrary decision. (Am.Compl. ¶ 59.) Plaintiffs appealed to the Court of Common Pleas of Philadelphia County, which upheld the arbitrator's decision as "rationally derived from the [collective bargaining] agreement...." *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia*, No. 1944 (Ct.C.P.Phila.County, Jan. 21, 1994) (quoting *Pa. State Police v. Pa. State Troopers Ass'n*, 159 Pa.Cmwlth. 489, 633 A.2d 1278, 1287 (1993), *rev'd*, 540 Pa. 66, 656 A.2d 83 (1995)).

Plaintiffs missed the deadline for further appeal to the Commonwealth Court of Pennsylvania and were denied permission to file an appeal *nunc pro tunc*. (Am.Compl. ¶ 60.) Plaintiffs then filed this suit in federal court for an alleged violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

---

1. Another relevant arbitration was brought in 1990 by permanently partially disabled Philadelphia fire fighters, who were found to be entitled to compensation for accrued, unused vacation time under a collective bargaining agreement which "mirrored" that of the police. (Am. Compl. ¶ 54.) For purposes of simplicity, all future references to the 1989 police arbitration should be considered to incorporate this 1990 fire fighters arbitration.

## II. DISCUSSION

Plaintiffs allege that they have been denied equal protection because their "public employer disobey[ed] an arbitration award in such a way that result[ed] in discriminatory treatment between similarly situated employees." (Pls.' Opp'n to Def.s' Mot. to Dismiss Am.Compl. at 15 n. 4.) In other words, plaintiffs allege that the City violated the Equal Protection Clause when it paid one disabled police officer, as it was required to do by an adverse arbitration ruling, and then refused to compensate these plaintiffs on a similar request, forcing them to bring their own grievance arbitration proceeding.

■ Plaintiffs' allegations fail to recognize the significance of one crucial step in this case's procedural history—plaintiffs' shift from state to federal court. That shift implicates the Rooker–Feldman doctrine, thereby raising questions regarding my jurisdiction to hear this case. I must consider such jurisdictional questions *sua sponte* before reaching the merits of plaintiffs' claim. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278 (1977).

### A. The Rooker–Feldman Doctrine

■ Federal district courts lack subject matter jurisdiction to review final state court adjudications or to evaluate constitutional claims that are "inextricably intertwined" with final state court adjudications. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 1315

n. 16, 75 L.Ed.2d 206 (1983). While federal district courts may hear "general challenges" to state rules, a complaint which is "in essence" an appeal of a final state court decision must be dismissed for lack of subject matter jurisdiction. *Id.* at 483 n. 16, 486, 103 S.Ct. at 1315 n. 16, 1316–17.

### 1. Plaintiffs' Claim is in Essence a Prohibited Appeal from State Court.

■ After examining the record, I am convinced that plaintiffs' complaint is in essence a prohibited appeal of a final state court decision, for the plaintiffs are asking me effectively to overrule the Court of Common Pleas.[2] The state court declared the plaintiffs ineligible for certain benefits when it upheld their arbitration decision, and plaintiffs now want this court to order the City to provide those very same benefits.[3]

Granted, plaintiffs made a valiant effort to reword their state court complaint as a federal § 1983 action, but that is not enough to "create" federal jurisdiction and bypass Rooker–Feldman.[4] Had plaintiffs come initially to federal court, they would have been able to proceed with their case.[5] However, under Pennsylvania state law the FOP is required to enter arbitration, with limited review in state court, in the event of an employment dispute with the City. 42 Pa. Cons.Stat. § 7302(d) (1995); Pa.Stat.Ann. tit. 43, §§ 217.4, 217.7 (1995). Plaintiffs there-

---

**2.** The lower state court decision in this case is considered "final" and therefore within the scope of Rooker–Feldman. *See Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. and N.J. Police Dep't,* 973 F.2d 169, 177 (3d Cir. 1992).

**3.** Plaintiffs' complaint clearly takes on the nature of an appeal when one looks at the entire procedural history of this case. Plaintiffs first went to the Court of Common Pleas of Philadelphia County and lost. They tried to appeal within the state court system, but only after the deadline for such appeals had expired. The Court of Common Pleas denied plaintiffs' petition for an appeal *nunc pro tunc,* an opinion which was later affirmed by the Commonwealth Court of Pennsylvania. Only after plaintiffs fully exhausted their state court options did they turn to federal court.

**4.** Compare with Younger abstention, which *is* bypassed when a plaintiff brings a § 1983 action in federal court, despite the existence of ongoing state proceedings. *Marks v. Stinson,* 19 F.3d 873, 883 (3d Cir.1994) ("Younger principles do not bar a Civil Rights Act plaintiff [42 U.S.C. §§ 1971 et seq., 1981 et seq.] from going forward in a federal forum simply because there are unexhausted possibilities for state litigation over the same subject matter"), *cert. denied, sub nom. Dougherty v. Marks,* —— U.S. ——, 115 S.Ct. 901, 130 L.Ed.2d 785 (1995).

**5.** Note, however, that plaintiffs' equal protection claim lacks merit and would have been dismissed had this court had jurisdiction. *See infra* part II.B.

fore have no right to bring this grievance to federal court.[6]

### 2. Plaintiffs' Claim is Not a General Challenge.

Plaintiffs argue that their complaint is a general constitutional challenge, and therefore outside the scope of Rooker–Feldman, because they are not asking this court to declare the state court wrong, but instead are asking only whether a city regulation[7] is being applied unconstitutionally. (Pls.' Mem. of Law at 11.)

■ It is true that general constitutional challenges to nonjudicially-promulgated state rules are not barred by Rooker–Feldman. *Feldman,* 460 U.S. at 486, 103 S.Ct. at 1315. However, whenever a plaintiff's federal court complaint is "inextricably intertwined" with a specific state court adjudication, it will not be allowed to proceed as a general challenge.

■ I have identified two schools of thought regarding the proper way to determine whether a complaint is "inextricably intertwined" with a state court adjudication: the "jurisdictional res judicata" school and the "nature of the relief" school. Under either theory, plaintiffs' complaint is clearly "inextricably intertwined."

#### a. Jurisdictional Res Judicata

Some courts have interpreted the "inextricably intertwined" test of *Feldman* to require a res judicata analysis, barring any claims that were raised or could have been raised in state court as long as there was a full and fair opportunity to raise such claims. *See* Gary Thompson, *The Rooker–Feldman Doctrine and the Subject Matter Jurisdiction of Federal District Courts,* 42 Rutgers L.Rev. 859 (Spring 1990). This theory was adopted by the Third Circuit in *Valenti v. Mitchell,* 962 F.2d 288 (3d Cir.1992):

We reject [plaintiffs'] argument that since they never raised, and the [state court]

never considered, their [constitutional] challenges, Rooker–Feldman cannot bar them from pursuing these claims in federal court. They each had an opportunity to raise a [constitutional] challenge and failed to do so. They cannot be allowed to escape Rooker–Feldman by raising a new constitutional theory in federal court.

*Id.* at 296 (citations omitted).

In this case, plaintiffs assert that their federal claims were not decided, and in fact could not have been decided, in state court. While their federal claims include alleged violations of equal protection, they claim that the Common Pleas Court only had jurisdiction to review whether the arbitrator acted within his powers. Plaintiffs are incorrect, however, as the Court of Common Pleas did have jurisdiction to reach their equal protection claim.

■ In this case, the Court of Common Pleas used the "essence" standard to review the decision of the arbitrator. *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia,* No. 1944 (Ct.C.P.Phila.County, Jan. 21, 1994). The court applied the "essence" standard in accordance with *Pa. State Police v. Pa. State Troopers Ass'n,* 159 Pa.Cmwlth. 489, 633 A.2d 1278, 1287 (1993), which was reversed by a 1995 Pennsylvania Supreme Court decision holding that the proper standard of review of grievance arbitration decisions is the "narrow certiorari" standard. *See Pa. State Police v. Pa. State Troopers Ass'n,* 540 Pa. 66, 656 A.2d 83, 90 (1995). Under both the "essence" standard and the "narrow certiorari" standard, the Court of Common Pleas can hear allegations of constitutional violations. *See Pa. State Police,* 633 A.2d at 1287; *Pa. State Police,* 656 A.2d at 90. Plaintiffs therefore had the right to raise in state court the issue of whether the City was violating the United States Constitution. Since plaintiffs' claim could have been raised

---

**6.** While I recognize that the plaintiffs will not have the opportunity to have their federal claims heard in federal court, in the words of the Supreme Court, "[t]his result is eminently defensible on policy grounds. We have noted the competence of state courts to adjudicate federal constitutional claims." *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. at 1315 n. 16.

**7.** The regulation at issue is Civil Service Regulation 32, which regulates treatment of and benefits to disabled city employees. (Am.Compl. ¶ 13.)

in state court, under the res judicata prong of Rooker–Feldman it is "inextricably intertwined" with the state court decision and therefore barred from federal district court review.

### b. Nature of the Relief

█ Other courts look at the content of the federal court complaint, specifically at the nature of the relief requested, to determine whether a plaintiff is looking to overturn a state court decision (in which case the federal court complaint is "intertwined" in violation of Rooker–Feldman) or whether the plaintiff is just making a general challenge and thereby avoiding the doctrine. The Third Circuit has also adopted this method of analysis. *See Centifanti v. Nix,* 865 F.2d 1422 (3d Cir.1989); *Stern v. Nix,* 840 F.2d 208 (3d Cir.1988), *cert. denied,* 488 U.S. 826, 109 S.Ct. 77, 102 L.Ed.2d 53 (1988).

In *Stern v. Nix,* petitioner was an attorney who was disbarred by the Supreme Court of Pennsylvania and who brought a § 1983 action in federal court to challenge the bar's procedural rules. Stern sought a declaratory judgment, a temporary restraining order, and a preliminary and permanent injunction to stay the Supreme Court's order disbarring him. The Third Circuit ordered Stern's case dismissed for lack of jurisdiction under the Rooker–Feldman doctrine, holding that his request for relief was incompatible with a general challenge.

Specifically, the court held that a declaratory judgment and a permanent injunction restraining the Supreme Court of Pennsylvania from disbarring Stern would effectively reverse the state court judgment in Stern's case. *Stern,* 840 F.2d at 212. In addition, Stern's request for a temporary restraining order and a preliminary injunction were barred because they required Stern to prove the likelihood of success on the merits and irreparable harm *to himself,* thus requiring the federal court to focus on the actions of the Supreme Court of Pennsylvania in Stern's particular case. *Id.* The Third Circuit concluded, "Despite [Stern's] genuflecting to the Rooker–Feldman doctrine, closer consideration convinces us that Stern's complaint is simply a skillful attempt to mask the true purpose of the action, which essentially is to reverse the judicial decision of the Supreme Court of Pennsylvania, in contravention of Rooker–Feldman." *Id.*

In comparison, the Third Circuit in *Centifanti v. Nix* found that the petitioners' complaint did set forth a viable general challenge to procedural rules. The petitioner in *Centifanti* was a suspended attorney who had been denied reinstatement by the Supreme Court of Pennsylvania. Like Stern, Centifanti sought declaratory and injunctive relief in federal court based on his claim that the state procedural rules were unconstitutional. However, unlike Stern, the Third Circuit allowed Centifanti to proceed in federal court.

The Third Circuit was influenced by the fact that Centifanti, unlike Stern, sought prospective relief. For example, his demand for injunctive relief was "to afford plaintiff and all similarly situated future petitioners for reinstatement Due Process prior to denial of their petitions." *Centifanti,* 865 F.2d at 1429. The Third Circuit found Centifanti's case to be a general challenge because, "[a]lthough such relief, if granted, could affect future decisions of the state supreme court, it would not require review of a past decision." *Id.* at 1430.

The relief requested by petitioners in *Stern* and *Centifanti* differed, therefore, in one crucial aspect: while Stern had been disbarred by the Supreme Court of Pennsylvania and was challenging his past disbarment, Centifanti had been denied reinstatement by the Supreme Court of Pennsylvania and was trying to change procedures for his and others' future petitions for reinstatement. The former is in violation of Rooker–Feldman; the latter is not.

In the instant case, plaintiffs' complaint fails for the same reasons articulated in *Stern.* Plaintiffs are requesting injunctions, damages, and declaratory judgments, all of which are clearly aimed to "correct" the state court's decision allowing the City to withhold from them certain benefits which they feel are past due. For example, their requests for relief include the following: (1) ordering defendants to pay plaintiffs three years of disability salary and make them whole for all damages sustained by them; (2) ordering

the City of Philadelphia to pay plaintiffs and all other similarly situated police officers the full amount of their accrued but unused vacation leave; (3) ordering the City to pay plaintiffs the full amount of compensation due to them at the time of their disability retirement, predicated upon their detrimental reliance that such money would, in fact, be paid upon retirement; (4) ordering that the City is estopped and enjoined from refusing to honor its promise to pay to plaintiffs the full amount of compensation due to them at the time of their disability retirement, predicated upon their detrimental reliance that such money would, in fact, be paid upon retirement. (Am.Compl. at 21–23.)

■ Plaintiffs' requests for relief are clearly focused on reversing the outcome of their unsuccessful state court appearance. Therefore, as in *Stern*, "a close examination of [plaintiffs'] case demonstrates that, despite [their] attempt to draft [the] complaint in the form of a general challenge to a state court rule, [they] in reality [are] seeking review of a state court judgment in [their] particular case. This does not pass muster under Rooker–Feldman." *Stern*, 840 F.2d at 213. Plaintiffs' federal court complaint is inextricably intertwined with the state court adjudication even under the "nature of the relief" prong of Rooker–Feldman. I therefore must dismiss for lack of jurisdiction under the Rooker–Feldman doctrine.[8]

### B. Discussion of the Merits

■ Even if this action were not barred by Rooker–Feldman, defendants' motion to dismiss would be granted because plaintiffs' underlying equal protection claim is meritless. Plaintiffs allege that the City is unconstitutionally differentiating between themselves and the similarly-situated police officer who received compensation in the 1989 arbitration. However, this is not what the City did. In fact, the City has consistently treated all similarly-situated employees exactly alike—it denied all permanently partially disabled police officers compensation for accrued, unused vacation time. (Am. Compl. ¶¶ 57, 58.) In order for the Equal Protection Clause to be violated, a state actor must intentionally classify people, or purposefully discriminate between people, in contravention of the Constitution. *Snowden v. Hughes*, 321 U.S. 1, 7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1944). In this case, the City did not take that first step necessary for a constitutional violation, that is to classify. The City treated all permanently partially disabled police officers alike to the extent that it had a choice. The only variation in treatment occurred when the arbitrator ordered it.

### III. CONCLUSION

Therefore, in accordance with the Rooker–Feldman doctrine, I dismiss plaintiffs' complaint due to the lack of federal subject matter jurisdiction. Accordingly, this 29th day of September, 1995, **IT IS ORDERED** that defendant's motion to dismiss is **GRANTED**. This case is closed.

---

8. Plaintiffs argue that the state court decision at issue was not a decision on the merits and therefore does not trigger a Rooker–Feldman analysis. (Pls.' Mem. of Law at 8.) The Third Circuit has stated that Rooker–Feldman is violated whenever a federal claim either (1) has already been determined on the merits by a state court or (2) is inextricably intertwined with a prior state court decision. *Marks v. Stinson*, 19 F.3d 873, 885 n.

11 (3d Cir.1994), *cert. denied, sub nom. Dougherty v. Marks*, —— U.S. ——, 115 S.Ct. 901, 130 L.Ed.2d 785 (1995). In this case, the state court opinion was a decision on the merits, and also the federal court complaint is inextricably intertwined with the state court decision. Rooker–Feldman therefore precludes federal court jurisdiction.