**Margaret M. BOYCE, Appellant**

v.

**Pamela P. DEMBE, Honorable Judge, individually and in her official capacity as Judge of the Court of Common Pleas of Philadelphia County; John W. Herron, Honorable Judge, individually and in his official capacity as**

---

Judge of the Court of Common Pleas of Philadelphia County; John T.J. Kelly, Jr., Honorable Judge, individually and in his official capacity as Judge of the Superior Court of Pennsylvania; J. Michael Eakin, Honorable Judge, individually and in his official capacity as Judge of the Superior Court of Pennsylvania; Peter Paul Olszewski, Honorable Judge, individually and in his official capacity as Judge of the Superior Court of Pennsylvania; Joseph H. Evers, individually and in his official capacity as the Prothonotary of Philadelphia County

No. 01–4199.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 26, 2002.

Filed Sept. 27, 2002.

Before BARRY, AMBRO, and GARTH, Circuit Judges.

OPINION

BARRY, Circuit Judge.

I.

Margaret M. Boyce appeals the District Court's dismissal of her Complaint for lack of subject matter jurisdiction. The District Court ruled that most of the claims she raised were barred by the *Rooker–*

*Feldman* doctrine ("*Rooker–Feldman*"), which prohibits, as a general matter, the review of state court adjudicative proceedings by a federal district court. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The District Court also found that Boyce lacked standing to raise other issues that it found were not barred by *Rooker–Feldman*. Our review is plenary. *Parkview Associates Partnership v. City of Lebanon*, 225 F.3d 321, 323–24 (3d Cir. 2000). We will affirm.

## II.

The tortuous procedural history of this case, and the substantive issues involved, are well known to the parties, and will only briefly be reviewed here. Pennsylvania attorney Margaret Boyce was discharged by a client whom she represented in a state court tort suit. A dispute developed between Boyce and the client's new attorney, Edward Chacker, over the case file and the potential fee, with Boyce claiming she had a lien on the file and refusing to turn it over. Chacker requested a court order directing Boyce to provide the file, and a hearing was held before Judge, now Justice, Russell Nigro. Boyce's motion for Judge Nigro to recuse himself because Chacker had contributed to Nigro's campaign was denied. Judge Nigro then ordered Boyce to provide the file within three days or pay a $1,000 fine. When she did not do so, Chacker filed contempt petitions in state court against Boyce. The first was rejected, but Boyce apparently was held in contempt after a September, 1997 hearing before Judge Dembe. The contempt citation, and a fine of $39,500, was affirmed by the Superior Court of Pennsylvania.

During the pendency of these actions and Boyce's subsequent efforts to appeal or move for reconsideration, the underlying tort suit settled, with the portion of the judgment constituting attorney's fees and costs held in escrow by the Prothonotary of Philadelphia. When Boyce requested her share, the Prothonotary, by order of Judge Herron of the Court of Common Pleas, withheld $39,500. Boyce's request for a hearing on Judge Herron's decision was denied.

Boyce then filed in the District Court the suit that has now reached us, naming as defendants each of the judges involved in the adverse decisions against her, as well as the Prothonotary. She alleged a laundry list of violations of due process and of equal protection, and a violation of her Sixth Amendment rights. Defendants moved to dismiss for lack of subject matter jurisdiction, and the District Court granted the motion. Boyce timely appealed.

## III.

The District Court dismissed Boyce's five count Complaint on two grounds. It held that it lacked subject matter jurisdiction to hear a number of claims within each of the counts under *Rooker–Feldman*. It dismissed the remaining claims on the ground that Boyce lacked standing to raise them because there was no way that the injuries she claimed could be redressed.

The *Rooker–Feldman* doctrine generally bars the review by a federal district court of a final adjudication by a state's highest court. *Rooker*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Blake v. Papadakos*, 953 F.2d 68, 71 (3d Cir.1992). The bar extends to a district court's review of decisions by lower state courts as well. *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth.*, 973 F.2d 169, 177–78 (3d Cir.1992). Also barred are

constitutional claims that are "inextricably intertwined with [a] state court's [judgment] in a judicial proceeding." *Feldman*, 460 U.S. at 482 n. 16. Such entwinement occurs when "federal relief can only be predicated upon a conviction that the state court was wrong." *Centifanti v. Nix*, 865 F.2d 1422, 1430 (3d Cir.1989) (citation omitted). With few exceptions, a federal district court lacks subject matter jurisdiction to review, essentially as an appellate court, a state court's adjudicative actions. *Guarino v. Larsen*, 11 F.3d 1151, 1153 (3d Cir.1993).

Where, however, a litigant makes a general challenge to rules, practices, or procedures stemming from nonjudicial proceedings, *e.g.*, purely administrative procedures, a federal court may acquire subject matter jurisdiction. *See Feldman*, 460 U.S. at 486; *Guarino*, 11 F.3d at 1153. Of course, the line between a general and a particular challenge, or between an adjudicative and an administrative task, may be hard to draw, *Stern v. Nix*, 840 F.2d 208, 211 (3d Cir.1988) (citation omitted), and the "intertwined" test is often applied to distinguish the two types of challenge.

Identifying the nature of the specific relief being sought can also help determine the nature of the challenge and thus whether subject matter jurisdiction exists. *Centifanti v. Nix*, 865 F.2d 1422, 1429 (3d Cir.1989). Such an approach helped us distinguish the facts and thus the applicability of *Rooker–Feldman*—in *Centifanti* from those in Stern, which had been reviewed shortly before.[1] Of course, this is simply an alternative approach to that used by the District Court, which sequentially addressed the counts of the Complaint. This approach, however, demonstrates that even some of the claims within those counts that the District Court held "may not be barred by *Rooker–Feldman*," A.21 (District Court Op. at 13), are in fact not simply general challenges to state administrative procedures, permitted by *Rooker–Feldman* but subject to a standing analysis. Rather, it shows that the Complaint is better characterized as "a skillful attempt to mask the true purpose of the action, which essentially is to reverse the judicial decision[s]" Boyce does not like. *Stern*, 840 F.2d at 212.

■ Boyce set out eight specific prayers for relief. A.47–49.[2] It is clear that at

---

1. *Stern* was decided by a panel of judges of the Second Circuit, who were assigned by the Chief Justice of the United States pursuant to 28 U.S.C. §§ 291(a) and 294(d), after all of the judges of the Third Circuit recused themselves. *See Stern*, 840 F.2d at 20 n.*.

2. Boyce sought:

1. A declaratory judgment that the policies, practices, procedures and acts complained of herein are illegal and unconstitutional.

2. A preliminary and permanent injunction preventing the defendants from keeping plaintiff's escrow monies or any others [sic] similarly held in contempt and fined without a hearing and opportunity to be heard.

3. A preliminary and permanent injunction preventing the defendants from impos-

ing a finding of contempt without providing a full evidentiary hearing at which plaintiff is given an opportunity to be represented and present a defense as well as cross–examining their accusers.

4. A preliminary and permanent injunction to the defendants, preventing them from imposing fines pursuant to a finding of criminal contempt without providing the safeguards of a criminal proceeding.

5. A preliminary and permanent injunction to the defendant Prothonotary preventing him from attaching monies for fines from escrowed monies without the usual and customary steps being executed for such a seizure and attachment.

6. A preliminary and permanent injunction to the defendants not to impose a fine without a hearing being held to determine if there has been compliance with any in-

least half—numbers 2, 3, 6, and 7 in note 2 below—on their face request action by a federal court that would effectively rule "that the state court was wrong." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring in the judgment). They do so by seeking a ruling that would change Boyce's current circumstances vis-a-vis her contempt status and/or the escrowed funds she claims. This relief is clearly precluded.[3]

■ The same is true for the relief she seeks in numbers 4 and 5. Regarding the Prothonotary (# 5), "any attempt to enjoin the enforcement of a state court judgment ... is suspect." *Stern*, 840 F.2d at 212. To enjoin the Prothonotary would "effectively reverse [a] state court judgment," *id.*—that is, Judge Herron's order to the Prothonotary.[4]

■ As for number 4, there is nothing in the record that even suggests that Boyce was held in criminal, rather than

civil, contempt.[5] Indeed, in its December 28, 1998, Memorandum Opinion, the Superior Court of Pennsylvania explicitly held that there was "no support for the contention the contempt action was to punish her, rather than to obtain compliance with the order to produce the file." But however framed, what Boyce complains of is the lack of a "full and fair opportunity" to litigate the contempt charge. Complaint at ¶ 43. The Superior Court's opinion, however, shows that that charge–civil or criminal–and the related constitutional claims Boyce raised were all fully addressed, and were rejected. Again, to review the procedures she challenges could "effectively reverse [a] state court judgment." *Stern*, 840 F.2d at 212. And again, this a federal district court may not do.

■ Ostensibly, Boyce's best chance to obtain relief would be by virtue of number 1 (declaratory relief).[6] We permitted a similar prayer for relief in *Centifanti*, where the plaintiff had sought a declara-

---

junctive order, either prior to or subsequent to the finding of contempt.

7. A preliminary and permanent injunction to the defendants that a full evidentiary hearing with the attendant safeguards must be conducted prior to a finding of contempt and that an abbreviated proceeding is insufficient to comply with due process and equal protection requirements of the United States Constitution.

8. Such other further relief as this Court may deem appropriate, including costs and reasonable attorney's fees.

3. We also note, regarding number 8 (catch–all relief), that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any cots, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction." 42 U.S.C. § 1988(b). Boyce may not recover such fees and costs here.

4. We agree with the District Court that, even if it had subject matter jurisdiction, a Prothonotary, who acts as a quasi–judicial officer,

would have absolute immunity. *See* 42 U.S.C. § 1983 (injunctive relief barred "unless a declaratory decree was violated or declaratory relief was unavailable"); *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir.1969) (prothonotary acting at direction of judge enjoys immunity); *cf. Wolfe v. City of Pittsburgh*, 140 F.3d 236, 240 (3d Cir.1998) (quoting *Lockhart* for proposition that "any public official acting pursuant to court directive is ... immune from suit.").

5. The basis for the allegation of criminal contempt seems to be a purported statement by Judge Eakin that the contempt fine of $39,500 was designed to "teach Boyce a lesson." *Appellant's Opening Brief* at 11. The statement appears nowhere in the limited record before us.

6. There she seeks a "declaratory judgment that the policies, practices, procedures and acts complained of herein are illegal and unconstitutional." A.47.

tory judgment that "the rules and procedures for considering petitions for reinstatement of suspended attorneys are unconstitutional." 865 F.2d at 1429 (quotation marks omitted). Because, we held, the district court would not be required to review the state supreme court decision, Centifanti's due process claim was not barred by the *Rooker–Feldman* doctrine.

Boyce is not, however, simply challenging relevant "rules and procedures," but is primarily challenging the allegedly unconstitutional "practices" and "acts" to which she was subjected. This is clearly different from the solely prospective relief Centifanti sought—relief limited to future petitions for reinstating suspended attorneys. 865 F.2d at 1429. The challenge here is closer to that in *Stern*, where what was facially a general challenge to state court rules was found to be more accurately framed as a challenge to the judgments in Stern's individual case. One telltale indication that *Stern* is a better analogy than *Centifanti* is the "extensive exposition of the specific facts in [Boyce's] case" in her Complaint and her briefs on appeal, "which hardly would have been necessary if the district court were being asked only" to review general practices of the state court, rather than what happened to her in her case. *Stern*, 840 F.2d at 212–13.[7] "Of course, the substance and not the form of the requested relief is ultimately controlling," *Centifanti*, 865 F.2d at 1429 n. 8, and, thus, despite the form of her pleadings, the declaratory judgment she seeks is also barred by *Rooker–Feldman*.

In summary, the Complaint demonstrates that what Boyce was effectively asking the District Court to review were the adverse decisions handed down by the state courts. A district court has no authority to review such decisions, and the Complaint was appropriately dismissed for lack of jurisdiction.

### IV.

We will affirm the District Court's order of October 30, 2001.

---

7. We note, as well, that the materials included in the 54 page supplemental appendix Boyce seeks leave to file deal exclusively with her treatment by the state courts and why that treatment was wrong.