*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0258P (6th Cir.)
File Name: 00a0258p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

FREDERICK A. PATMON,
     *Plaintiff-Appellant,*

     *v.*

MICHIGAN SUPREME COURT;
CONRAD L. MALLET, JR.;
CORBIN R. DAVIS, Clerk;
STATE BAR OF MICHIGAN;
EDMUND M. BRADY, JR.,
President; ATTORNEY
DISCIPLINE BOARD FOR THE
STATE OF MICHIGAN; MILES
A. HURWITZ, Chairperson;
JOHN F. VAN BOLT;
MICHIGAN ATTORNEY
GRIEVANCE COMMISSION;
PHILLIP J. THOMAS,
     *Defendants-Appellees.*

No. 98-2364

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-71470—Patrick J. Duggan, District Judge.

Argued: January 25, 2000

Decided and Filed:  August 1, 2000

Before:  JONES, NORRIS, and SILER, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Clarence B. Tucker, Sr., TUCKER & HUGHES, Detroit, Michigan, for Appellant.  Margaret A. Nelson, OFFICE OF THE ATTORNEY GENERAL, TORT DEFENSE DIVISION, Lansing, Michigan, Victoria V. Kremski, STATE BAR OF MICHIGAN, Lansing, Michigan, Richard L. Cunningham, MICHIGAN ATTORNEY GRIEVANCE COMMISSION, Detroit, Michigan, for Appellees. **ON BRIEF:** Clarence B. Tucker, Sr., TUCKER & HUGHES, Detroit, Michigan, for Appellant.  Margaret A. Nelson, OFFICE OF THE ATTORNEY GENERAL, TORT DEFENSE DIVISION, Lansing, Michigan, Thomas K. Byerley, STATE BAR OF MICHIGAN, Lansing, Michigan, Richard L. Cunningham, MICHIGAN ATTORNEY GRIEVANCE COMMISSION, Detroit, Michigan, for Appellees.

NORRIS, J., delivered the opinion of the court, in which SILER, J., joined.  JONES, J. (pp. 13-14), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

ALAN E. NORRIS, Circuit Judge.  Plaintiff, Frederick A. Patmon, filed an action in district court under 42 U.S.C. § 1983 (1994) against the Michigan Supreme Court, the Michigan Attorney Grievance Commission, the Attorney Discipline Board, the State Bar of Michigan, and various officials affiliated with these entities in order to challenge his temporary suspension from the practice of law.  Plaintiff

challenge to Michigan's disciplinary rules, I respectfully dissent from the majority's conclusion on that issue.

alleged that the Michigan statutes and court rules governing the practice of law deprived him of certain rights guaranteed by the federal constitution, among them the right to due process. The district court granted defendants' motion to dismiss and/or for summary judgment. For the following reasons, we AFFIRM the district court.

### I.

Plaintiff began practicing law in Michigan in 1966. In 1985 the Michigan Attorney Grievance Commission ("Commission") filed a complaint against him for failure to return a client's funds. On December 28, 1989, a hearing panel appointed by the Attorney Disciplinary Board ("Board") found him guilty of professional misconduct and suspended his license to practice law for ninety days. Plaintiff appealed this suspension to the Board, which affirmed the panel's decision on May 14, 1990. The Michigan Supreme Court declined plaintiff's application for leave to appeal on May 31, 1991. The suspension, which had been stayed pending these appeals, then took effect.

Plaintiff continued to contest his suspension: he filed a motion for reconsideration with the Michigan Supreme Court and requested a stay of discipline pending its resolution.[1] The Michigan Supreme Court denied both his motion for reconsideration and his request for a stay.

In the wake of these proceedings, defendant Phillip Thomas, acting in his role as grievance administrator for the Commission, investigated complaints that plaintiff had practiced law during his suspension. As a result, two formal complaints were filed with the Commission. They alleged that plaintiff had conducted depositions while under suspension; had filed pleadings on behalf of a client, and had failed to

---

[1] Plaintiff also based his application for a stay on the fact that he was awaiting a ruling on his application for a writ of certiorari in the United States Supreme Court.

notify his clients and others that he was under suspension, as required by court rules.

The complaints were referred to a hearing panel. The panel concluded that some of the allegations lodged against plaintiff were justified but that others were not. After it conducted a separate hearing with respect to the appropriate level of discipline, it issued an order that imposed a 180-day suspension to commence on October 29, 1996.

Plaintiff once again appealed to the Board, which affirmed the 180-day suspension, effective May 16, 1997. Plaintiff then filed a motion for reconsideration, which was denied. The Michigan Supreme Court stayed the matter once again, but on September 16, 1997 denied leave to appeal and ruled that the suspension would go into effect after 21 days, on October 8, 1997.[2]

Plaintiff filed this action in federal district court on April 3, 1998 after the state court proceedings were concluded. In addition to monetary compensation, plaintiff seeks declaratory and injunctive relief.

The district court granted judgment to defendants on two grounds: Eleventh Amendment immunity from suit and the holding in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The court also noted its belief that plaintiff had failed to state a viable constitutional claim.

The Eleventh Amendment confers sovereign immunity upon the states. Except in limited circumstances, a state (or one of its departments or agencies) cannot be sued in federal court without its consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Thiokol Corp. v. Department of Treasury, State of Mich., Revenue Div.*, 987

---

[2]Although plaintiff's suspension has run its course, and he was eligible as of April 6, 1998 to seek reinstatement, plaintiff has not done so.

---

## CONCURRING IN PART, DISSENTING IN PART

---

NATHANIEL R. JONES, Circuit Judge, concurring in part, dissenting in part. Although I concur with that part of the opinion which affirms summary judgment on Patmon's grievance claims, I disagree with the majority's conclusion that the district court lacked subject matter jurisdiction because Patmon's constitutional challenge to Michigan's rules and procedures are "inextricably intertwined" with his state judicial proceedings. An examination of Patmon's complaint indicates that he alleges that the Michigan rules violate the Constitution both facially and as applied to him.

In paragraph 19 of the Complaint, Patmon contends that "MCR 9.119(A)-(F), MCR 9.122(C), MCR 9.104(8), (9), MRPC 3.4(c), MRPC 5.5(a), and MCLA § 600.916 . . . are unconstitutional on their face and/or as applied to the conduct of suspended attorneys for less than 120 days . . . including Mr. Patmon." J.A. at 26. Although Patmon includes himself in the group of aggrieved attorneys, he lists several reasons why the rules are unconstitutional on their face.[1] As the D.C. Circuit ruled in *Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72 (D.C. Cir. 1997), the *Rooker-Feldman* doctrine does not apply to this portion of Patmon's Complaint because the claim can "stand on its own feet" as a facial challenge to Michigan's rules and procedures without reference to Patmon's particular grievance claims. *Ante* at 10-11. Because the *Rooker-Feldman* doctrine provided the district court subject matter jurisdiction over Patmon's facial

---

[1]Patmon asserts *inter alia*, that the rules are impermissibly overbroad and vague, fail to establish reasonably ascertainable standards of guilt, and allow aggrieved attorneys to be disciplined prior to actual notice of the Effective Date of the suspension order and adversary hearings, all in violation of the Due Process Clause of the Fourteenth Amendment.

Therefore, the district court correctly determined that it lacked subject matter jurisdiction in this case, and it is affirmed on that ground.

Because application of the *Rooker-Feldman* doctrine reveals that the district court did not have jurisdiction, we decline to address the Eleventh Amendment immunity of defendants.

### III.

The judgment of the district court is **AFFIRMED**.

F.2d 376, 381 (6th Cir. 1993). Based upon these principles, the district court determined that defendants possessed Eleventh Amendment immunity from plaintiff's suit.

The district court also concluded that the *Rooker-Feldman* doctrine divested it of subject matter jurisdiction because the complaint essentially sought review of plaintiff's attorney grievance proceedings. In *Feldman*, *supra*, 460 U.S. at 476, the Supreme Court determined that 28 U.S.C. § 1257 provided the only avenue for federal review of state court proceedings (this holding is often referred to as the *Rooker-Feldman* doctrine; *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)). Section 1257 provides:

> Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

28 U.S.C. § 1257(a) (1993). The district court concluded that it was without jurisdiction to review plaintiff's complaint because subject matter jurisdiction was limited to the Supreme Court by § 1257. In reaching this conclusion, the court explained (citations omitted):

> [T]he state proceedings were judicial in nature. There is no dispute that the grievance proceedings undertaken by the [Board] were adversarial in nature with the ultimate question being whether plaintiff violated the Michigan Court Rules by practicing law during his suspension. Thus, it clearly involved a determination of liabilities

based on facts and law existing at the time. Furthermore, this process involves the ability to seek leave to appeal to the Michigan Supreme Court. . . .

. . . .

While it is true that a full review was not given by the Michigan Supreme Court, nevertheless, the process permits an appellant to seek leave to appeal to the Michigan Supreme Court and, in this Court's opinion, a decision by the Michigan Supreme Court denying leave constitutes judicial review sufficient to satisfy any constitutional requirement of a judicial review.

. . .

The Court rejects plaintiff's claim, raised throughout his pleadings and repeatedly by counsel at oral argument, that he is bringing a general challenge to such rules and procedures. Plaintiff's complaint alleges, *inter alia*, that defendants unconstitutionally applied certain provisions of the Michigan Court Rules in the disciplinary proceedings against plaintiff and deprived him of his due process and equal protection rights. Plaintiff further asserts that the allegedly unconstitutional court rules and practices were being enforced in a way that violated plaintiff's constitutional rights. By way of relief, his complaint seeks, among other things, a declaration that Patmon's rights have been violated and that Patmon's conduct as a lawyer is protected by the United States Constitution. Plaintiff also seeks orders restoring plaintiff's license and purging his disciplinary records. Such averments indicate that plaintiff is challenging his license suspension, and his claims are therefore inextricably intertwined with the grievance process. *See Feldman*, 460 U.S. at 486-87. Accordingly, plaintiff's claims against the [Board] and Phil Thomas are dismissed.

absence of notice to the public in the process of appointing Board members, . . . and challeng[ed] . . . the unduly 'limited review' powers of the [Court] over the Board" because they "seem[ed] perfectly able to stand on their own feet, as would any facial challenge to agency rules." *Id.* at 76.

The federal district courts will still lack subject matter jurisdiction over constitutional challenges to state rules and procedures under the *Rooker-Feldman* doctrine, however, where the general constitutional challenge is "inextricably intertwined" with state judicial proceedings. *Feldman*, 460 U.S. at 486-87; *see also Stanton*, 127 F.3d at 76 (holding that the core of the constitutional challenge must be independent of the judicial determination to avoid the *Rooker-Feldman* doctrine). Although plaintiff argues that he is making a general constitutional challenge, a reading of his complaint reveals that the core of his constitutional claims is a challenge to the State of Michigan's application of the rules to him. Plaintiff's complaint alleges that certain rules of practice violate the Constitution, but only explains how they did so when applied to him. For example, plaintiff alleges that the rules violate liberty and property rights, but then demonstrates that they do so by complaining about the loss of his reputation and the capricious targeting of his case. He argues that the rules are overbroad and too vague, but never specifies in what way this is so. Furthermore, plaintiff never even specifies the language of the rules he objects to, but just explains how they affected his proceedings. In sum, although he does make general allegations of facial invalidity, the context of plaintiff's complaint shows that his arguments concern how the rules were applied to him, and do not truly present a facial constitutional challenge. His constitutional claims are therefore inextricably intertwined with the state judicial determinations of his case. Any review of the constitutional claims would require review of the state court proceedings, thereby violating the *Rooker-Feldman* doctrine. Further, as noted by the district court, plaintiff's requested remedies of an injunction and monetary damages would require the federal district court to review a prior state judicial determination.

this regard, 28 U.S.C. § 1257 does not act as a bar to the District Court's consideration of the case and because the proceedings giving rise to the rule are non-judicial the policies prohibiting United States District Court review of final state court judgments are not implicated. United States District Courts, therefore, have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case. They do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court. 28 U.S.C. § 1257.

*Id.* at 486. "The Michigan Supreme Court's promulgation of rules of practice and procedure is a legislative activity." *Alia v. Michigan Supreme Court*, 906 F.2d 1100, 1102 (6th Cir. 1990); *see also Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 75 (D.C. Cir. 1997) ("In promulgating rather than applying bar rules, [the District of Columbia court] acts in a legislative rather than a judicial capacity."); *Centifanti v. Nix*, 865 F.2d 1422, 1427 (3d Cir. 1989) ("state supreme courts may act in a nonjudicial capacity in promulgating rules regulating the bar."). Therefore, if plaintiff is claiming that the rules at issue are unconstitutional on their face, independently of any claim concerning how they were applied to him in state judicial proceedings, the *Rooker-Feldman* doctrine does not bar jurisdiction.

Plaintiff argues that his "complaint is a general constitutional attack on the constitutionality of the Michigan attorney discipline sanction proceedings/process," and therefore the district court possessed jurisdiction over this suit. He likens his case to *Stanton, supra*, in which the court looked to *Feldman* and concluded that the doctrine did not apply to those portions of the complaint that attacked "the

Finally, the district court expressed grave doubts about whether plaintiff had alleged a bona fide constitutional issue:

The Court has a serious question whether or not plaintiff is even asserting a federal constitutional question. At the hearing on this motion, petitioner identified his federal constitutional issue as a denial of his due process rights because he was not given a 21-day stay after the Michigan Supreme Court, on May 31, 1991, denied his application for leave to appeal. Plaintiff received notice of this order on or about June 3, 1991. The disciplinary proceedings that are the subject of this lawsuit charged Patmon with "practicing law" on June 11, 1991 while his license was suspended. Plaintiff contends that "due process" requires a "21-day stay" from the date of the Supreme Court order. Plaintiff avers that a 21-day stay of proceedings was granted by the [Board] following its orders of discipline, and if the Michigan Supreme Court had granted a 21-day stay in its order of May 31, 1991, his conduct on June 11, 1991 would not have constituted any violation. MCR 7.317 provides that, "Unless otherwise ordered by the Court, an order or judgment is effective when it is issued." The Court does not believe that plaintiff has any "federally protected" constitutional right to a 21-day stay of the Michigan Supreme Court's order of May 31, 1991.

Plaintiff now appeals the district court's judgment to this court.

## II.

This court reviews the district court's grant of a motion to dismiss and/or for summary judgment *de novo*. *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir.1999). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c) (1999). There is no genuine issue of material fact when the "record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party shows that summary judgment is warranted by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In *Feldman*, *supra*, petitioner appealed the denial of his request for admission to the District of Columbia bar based upon its rule requiring applicants to have graduated from a law school approved by the American Bar Association. Petitioner Feldman had pursued his legal education by apprenticing with a practicing lawyer, a path approved in Virginia. Thereafter, he clerked for a federal district judge and passed both the Maryland and Virginia bar examinations. Nonetheless, the Committee on Admissions to the District of Columbia Bar refused his application for membership on the ground that he had not graduated from an approved law school. After initially appealing to the District of Columbia Court of Appeals, which denied relief, petitioner filed suit in federal district court challenging the constitutionality of the bar admission rule. The district court dismissed for lack of subject matter jurisdiction on the theory that 28 U.S.C. § 1257 provided for appeal directly to the Supreme Court.

The Supreme Court affirmed the district court's decision to the extent that petitioner sought review of the facts of his own case. In reaching its decision, the Court observed that the first inquiry was whether the challenged proceedings were judicial in nature. *Feldman*, 460 U.S. at 476. If so, then the district court lacked subject matter jurisdiction pursuant to 28 U.S.C. § 1257. The Supreme Court explained that:

A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and

end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.

*Id.* at 477 (quoting *Prentis v. Atlantic Coast Line*, 211 U.S. 210, 226 (1908)). The determination of whether a proceeding is judicial or administrative turns on the nature of the proceeding, rather than on the nature of the body conducting the proceeding. *Id.*

Plaintiff argues that the order denying leave to appeal rendered by the Michigan Supreme Court "was neither a judicial ruling on the merits . . . nor any affirmance of the [Board's] order of discipline." As the district court pointed out, however, the Michigan court rules prescribe that parties seeking leave to appeal must set out the issues for review and concise arguments in support. In this respect, the procedure is like that of petitioning the United States Supreme Court for a writ of certiorari, and we conclude that the Michigan court's ruling does constitute a judicial decision. Patmon's state proceedings concerned the application of existing rules governing the practice of law to his conduct, rather than the promulgation of rules for future application, and therefore were judicial in nature.

*Feldman*, however, went on to state that a district court does have jurisdiction over a claim facially attacking the constitutionality of a statute or rule (a bar admission rule in *Feldman*), which is the result of legislative or administrative proceedings:

Challenges to the constitutionality of state bar rules . . . do not necessarily require a United States District Court to review a final state court judgment in a judicial proceeding. Instead, the District Court may simply be asked to assess the validity of a rule promulgated in a non-judicial proceeding. If this is the case, the District Court is not reviewing a state court judicial decision. In