# United States Court of Appeals
## For the First Circuit

No. 00-1722

DAVID WILSON,

Plaintiff, Appellant,

v.

DONALD SHUMWAY
in his official capacity as Commissioner of the New Hampshire
Department of Health and Human Services,

PAUL GORMAN
in his official capacity as Director of the Division of
Behavioral Health Services,

CHESTER BATCHELDER
in his official capacity as Superintendent of the
New Hampshire Hospital,

Defendants, Appellees.

————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

————————

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Stahl, Senior Circuit Judge.

————————

Pamela Jermyn-Kaley, with whom Ronald K. Lospennato, were on brief, for appellant.
Daniel J. Mullen, with whom Philip T. McLaughlin, Attorney General and Andrew B. Livernois, Assistant Attorney General, were on brief, for appellees.

September 10, 2001

**TORRUELLA, Circuit Judge.** Appellant David Wilson sued various officials in charge of New Hampshire's mental health system alleging constitutional and statutory violations relating to the authority of his court-appointed guardian to approve the administration of anti-psychotic drugs without Wilson's consent. On a motion for summary judgment, the district court dismissed the suit for lack of subject matter jurisdiction, citing the Rooker-Feldman doctrine. We affirm.

## BACKGROUND

David Wilson suffers from mental illness which has been diagnosed as, among other things, paranoid schizophrenia. On February 6, 1997, following an incident in which Wilson apparently threatened a neighbor with a loaded gun, the Merrimack County Probate Court of New Hampshire ordered Wilson to be involuntarily confined to New Hampshire Hospital for up to three years. While under such confinement, the State petitioned the Belknap County Probate Court to appoint a guardian for Wilson, due primarily to Wilson's refusal to take the anti-psychotic medication Haldol as recommended by his psychiatrists. Among the responsibilities sought to be assumed by the guardian were decisions relating to Wilson's living arrangements and medical treatment options. The probate court granted this request on May 19, 1997. In re Guardianship of David Wilson, No. 1997-0171 (order) [hereinafter Guardianship I].

-3-

On March 20, 1997, Wilson filed a pro se complaint in the federal court in New Hampshire seeking injunctive relief and monetary damages. The crux of his charge was that the forced administration of anti-psychotic medication violated his constitutional rights. The magistrate judge assigned to review Wilson's complaint dismissed most of the claims except for those alleged under the Eighth and Fourteenth Amendments.

On November 10, 1997, Wilson was conditionally discharged from New Hampshire Hospital. This discharge has since been revoked several times due to refusal of medication, depression, and suicidal ideation, resulting in admissions to either New Hampshire Hospital or Cypress Center. Because of Wilson's continued refusal to take anti-psychotic medication, his guardian has approved the forced administration of Haldol to Wilson.

On December 23, 1997, Wilson filed a Petition to Terminate Guardianship in Belknap County Probate Court pursuant to N.H. Rev. Stat. Ann. § 464-A:39 II. Concurrently, he filed an Assented to Motion to Stay Proceedings in the federal district court pending a determination on the motion to terminate the guardianship. On June 8, 1998, the probate court denied Wilson's Petition to Terminate Guardianship, finding, beyond a reasonable doubt, that:

> (a) David Wilson continues to be incapacitated.
> (b) Guardianship is necessary as a means of providing for the ward's continuing care,

supervision and rehabilitation. (c) There are no available alternative resources which are suitable with respect to the ward's welfare, safety and rehabilitation. (d) Guardianship is appropriate as the least restrictive form of intervention consistent with the preservation of the ward's civil rights and liberties.

In re Guardianship of David Wilson, No. 1997-0171 at 2 (order) [hereinafter Guardianship II]. In addition, the court held that Wilson continued to be incapable of exercising the rights that had been assigned to the guardian in the initial determination. As such, Wilson's guardian retained the authority to make decisions regarding his medical treatment, including the administration of anti-psychotic medication. Wilson's notice of appeal to the New Hampshire Supreme Court was denied on January 29, 1999.

Subsequent to the second guardianship determination, the voluntary stay was lifted from the federal lawsuit, and Wilson filed an amended complaint naming as defendants: Donald Shumway, in his official capacity as the Commissioner of the New Hampshire Department of Health and Human Services, Paul Gorman, in his official capacity as Director of the Division of Behavioral Health Services, and Chester Batchelder, in his official capacity as Superintendent of New Hampshire Hospital. The claims were brought pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 et seq., and invoked Wilson's rights under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution.

-5-

More specifically, Wilson alleged that the forcible administration of anti-psychotic medication: (1) violated his right to personal privacy and bodily integrity; (2) violated his right to freedom of speech and association; (3) violated his right to substantive due process; (4) deprived him of his ability to make an informed judgment regarding anti-psychotic medication based on his mental illness, thus not affording him the benefit of New Hampshire law, in violation of the ADA; and (5) violated his right to procedural due process in not giving him notice and a hearing prior to the forced medication. Wilson requested a preliminary and permanent injunction preventing the defendants from forcibly medicating him unless a serious and immediate physical threat to himself or others existed, a judgment declaring that defendants' actions violated the above enumerated constitutional rights and the ADA, attorneys fees, and any other appropriate relief.

The district court dismissed Wilson's case, holding that, under the Rooker-Feldman doctrine,[1] the federal court lacked subject matter jurisdiction to rule on the substance of his claims. Wilson v. Shumway, No. Civ. 97-099-B, 2000 WL 1499469 (D.N.H. May 8, 2000) (mem. and order). The district court characterized Wilson's federal action as an "attempt[] to appeal adverse rulings in the state guardianship

---

[1] A full explanation of the Rooker-Feldman doctrine will be provided in the Discussion section of this Opinion.

-6-

proceedings." Id. at *1. Examining the proceeding in the probate court, the district court noted that Wilson had asked the probate court to determine whether vesting the decisionmaking power regarding medication in a guardian violated Wilson's rights under the First Amendment, the Equal Protection Clause, and the ADA. Thus, "Wilson's primary argument in the probate court was that the guardianship denied him his rights under the Constitution and the ADA to refuse anti-psychotic medication." Id. at *2. The district court went on to find that the claims that had been asserted in the federal case were "inextricably intertwined" with those that were litigated in the guardianship proceeding, because a favorable decision would require the district court to conclude that the probate court had erred in its opinion. Id. Citing First Circuit precedent, the district court further held that the Rooker-Feldman doctrine applies to 42 U.S.C. § 1983 claims.

### DISCUSSION

Our review of a dismissal for lack of subject matter jurisdiction is de novo. Corrada-Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 44 (1st Cir. 2001).

### A.  Rooker-Feldman Doctrine

The Rooker-Feldman doctrine takes its name from two Supreme Court cases: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and, six decades later, District of Columbia Court of Appeals v. Feldman,

460 U.S. 462 (1983).  In Rooker, the Court was asked to declare a judgment of the Indiana state courts null and void as a violation of the Contract, Due Process, and Equal Protection Clauses of the United States Constitution.  The Court affirmed the district court's conclusion that jurisdiction was lacking, stating that: "Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment [of a state court] for errors of that character."  Rooker, 263 U.S. at 416.

The Feldman case expanded in some significant ways upon the relatively non-controversial principle that only the Supreme Court has jurisdiction to review decisions of state courts.  The plaintiffs, Marc Feldman and Edward Hickey, Jr., had both sought admission to the District of Columbia bar.  Feldman, 460 U.S. at 465, 471.  Standing in their way was an admissions rule requiring applicants to have graduated from an ABA-approved law school, id. at 464; Feldman had pursued an apprenticeship-type program with a practicing attorney in Virginia, id. at 465, while Hickey had attended a non-accredited law school, id. at 470.  After being denied admission by the Committee on Admissions of the District of Columbia Bar, Feldman petitioned for a waiver of the requirement to the District of Columbia Court of Appeals.  Id. at 465-66.  Hickey also petitioned for a waiver.  Id. at 471.  Both requests were denied in per curiam orders.  Id. at 468, 472.

-8-

Feldman and Hickey then filed suit in federal district court challenging the denials of their waiver petitions and the constitutionality of the admission rule.  Id.  The district court dismissed the complaint, holding that it lacked subject matter jurisdiction.  The Court of Appeals for the District of Columbia Circuit reversed, Feldman v. Gardner, 661 F.2d 1295 (D.C. Cir. 1981), and appeal followed to the Supreme Court.

After making a preliminary determination that the District of Columbia Court of Appeals' denials of the waiver petitions were judicial proceedings,[2] Feldman, 460 U.S. at 479, the Supreme Court held that the district court lacked jurisdiction to review issues that were either resolved by the waiver decisions or "inextricably intertwined" with those issues that were decided:

> If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the District Court is in essence being called upon to review the state court decision.  This the District Court may not do.

Id. at 482 & n.16.  On the other hand, the district court did have subject matter jurisdiction over the general constitutional challenge

---

[2]  The Court held that the proceeding was judicial, rather than administrative or ministerial, reversing the conclusion of the D.C. Circuit that the denials of waiver were not judicial in nature.  Since there is no claim that the probate court determination was anything but a judicial proceeding, we treat it as such in this appeal.

-9-

to the bar admission rule, provided that no review of Feldman or Hickey's individual denials resulted.  Id. at 486.  The Supreme Court remanded the case for a determination on the merits on the issue of whether the requirement that Bar members have degrees from ABA-approved schools was unconstitutional.  Id. at 487-88.

Following the parameters of the Rooker-Feldman doctrine as articulated by the Supreme Court and this circuit,[3] we proceed to the question of whether Wilson's federal claims are "inextricably intertwined" with those of the state probate court proceeding, or if any general challenges to New Hampshire's guardianship laws have been presented.

## B.  Deconstructing Wilson's Federal Lawsuit

Not surprisingly, Wilson characterizes his federal claims as involving general constitutional challenges to New Hampshire's procedure for permitting a guardian to authorize the involuntary administration of anti-psychotic drugs to a ward.  First, Wilson emphasizes that he is not contesting the appointment of a guardian by the probate court.  Instead, he argues that the current statutory scheme relating to involuntary medication lacks constitutionally-

---

[3] E.g., Sheehan v. Marr, 207 F.3d 35, 39-40 (1st Cir. 2000) (finding adjudication of appellant's federal ADA suit not barred by prior state involuntary retirement proceeding); Hill v. Town of Conway, 193 F.3d 33, 39-40 (1st Cir. 1999) (affirming lack of subject matter jurisdiction); Schneider v. Colegio de Abogados de P.R., 917 F.2d 620, 628-29 (1st Cir. 1990) (affirming jurisdiction over a "general" constitutional challenge to a statutory requirement of bar membership).

guaranteed procedural due process mechanisms.  Specifically, Wilson claims that before a recommendation that a ward be forcibly medicated can be submitted to a guardian for authorization, a ward is entitled to: (1) notice that such a recommendation will be made, with legal and factual reasons for the recommendation explicitly provided; (2) notice of a right to a hearing before an impartial arbiter in which the need for medication must be proven beyond a reasonable doubt; and (3) notice of the right to be represented by counsel at that hearing.

Appellees, in contrast, interpret Wilson's federal complaint as nothing more than a thinly-veiled attack on the state guardianship proceeding.  Because Wilson's federal complaint focuses on forcible medication as applied to him, and seeks personal, rather than general, relief, appellees charge that Wilson's claim of a "general" challenge is merely an attempt to avoid the Rooker-Feldman bar to jurisdiction.  Finally, appellees argue that the injury Wilson complains of would not exist if not for the probate court's determination that guardianship was appropriate.  His federal case, then, seeks to undo the consequences of the state court judgment, and such jurisdiction is prohibited under Rooker-Feldman.

After reviewing the arguments of both sides, as well as Wilson's amended complaint, we conclude that the district court was correct in dismissing Wilson's complaint for lack of jurisdiction.  In so holding, we are unpersuaded by Wilson's claim that he has mounted a

general constitutional challenge to the New Hampshire provisions for authorizing the involuntary administration of anti-psychotic drugs. We turn first to the non-procedural claims alleged in Wilson's complaint, and then proceed to his primary appellate argument.

Most of the claims asserted in Wilson's federal lawsuit are obviously barred by the Rooker-Feldman principle that lower federal courts lack jurisdiction to review decisions of the state courts. Wilson implicitly concedes as much by not addressing them in his brief to this Court. Among the "disputed issues of law" submitted to the probate court in Wilson's pre-trial statement were "[w]hether an order of guardianship which denies Mr. Wilson his right to refuse psychotropic medication discriminates against him . . . contrary to the Americans with Disabilities Act," and "violates the First Amendment, and the Equal Protection and Due Process Clause of the Fourteenth Amendment." These arguments presented to the state probate court essentially mirror those made in Wilson's federal amended complaint. The district court thus properly refrained from deciding whether the forcible administration of drugs to Wilson violates the Constitution and/or the ADA, because retaining jurisdiction would have put the district court in the position of reviewing the probate court's decision. See, e.g., Wang v. N.H. Bd. of Registration in Med., 55 F.3d 698, 703 (1st Cir. 1995).

Turning to the main argument that Wilson asserts on appeal: that his federal suit includes a general allegation that a ward is constitutionally guaranteed certain notice and procedures, we examine Wilson's amended complaint to determine whether a general constitutional challenge arguably not barred by Rooker-Feldman was actually made. See Patmon v. Mich. Sup. Ct., 224 F.3d 504, 510 (6th Cir. 2000); Stern v. Nix, 840 F.2d 208, 212 (3d Cir. 1988). To open his complaint, Wilson states that the purpose of his lawsuit is "to enjoin the administration of psychotropic or other mood altering medications against his will," and that forcing him to take those drugs violates his rights under the Constitution. As for the specific procedural due process violation claim, Wilson again couches his allegations in personal and individual terms. See Patmon, 224 F.3d at 510. The substance of Wilson's claims reference the personal circumstances of his case, that given his ability to make an informed choice about whether or not to consent to medication, forcible administration violates his constitutional rights. See Musslewhite v. State Bar of Tex., 32 F.3d 942, 947 (5th Cir. 1994). Similarly, all of the relief sought would only impact Wilson individually: an injunction preventing the defendants from forcibly medicating him and a judgment declaring that defendants' acts violated Wilson's constitutional rights and his rights as guaranteed by the ADA. Finally, any reference to the

-13-

allegedly offending New Hampshire regulation is wholly absent from Wilson's complaint.  See Patmon, 224 F.3d at 510.

"This is about substance, not about form." Musslewhite, 32 F.3d at 947.  It is fairly obvious that Wilson's arguments to this Court and in his appellate brief represent an attempt to carve a general constitutional challenge out of his federal lawsuit in order to escape the jurisdictional bar of Rooker-Feldman. Cf. Stern, 840 F.2d at 212-13 ("as the proceedings continued, the veneer of the 'general challenge' became increasingly thin").  Wilson has not brought any such general challenge to the New Hampshire policies and practices governing involuntary administration of anti-psychotic medication, but instead seeks only to remedy his current guardianship situation.  See Patmon, 224 F.3d at 510.  This issue has been considered and resolved in the New Hampshire court system and cannot be re-litigated here.

## C.  42 U.S.C. § 1983

Wilson claims that the Rooker-Feldman doctrine should not be applied to cases brought under 42 U.S.C. § 1983.  While acknowledging that this circuit has dismissed § 1983 suits pursuant to Rooker-Feldman, Wang, 55 F.3d at 703, Wilson urges us to overrule this precedent for the reason that § 1983 has its own jurisdictional provision granting original jurisdiction to the federal district courts.  28 U.S.C. § 1343(a)(3).  We are not persuaded by this argument

and decline to reverse our prior determination that the Rooker-Feldman doctrine is applicable to cases brought under 42 U.S.C. § 1983.

<u>**CONCLUSION**</u>

The decision of the district court dismissing the case for lack of federal court jurisdiction based on the Rooker-Feldman doctrine is **affirmed**.