Charles G. WILLIAMS
III, Esq., Plaintiff,

v.

THE INDIVIDUAL JUSTICES OF THE
SUPREME JUDICIAL COURT OF
THE STATE OF MAINE, Defendants

No. CIV. 02–204–P–C.

United States District Court,
D. Maine.

Feb. 10, 2003.

Charles G Williams, III, Norwood, MA, Pro Se, Plaintiff.

Paul Stern, Assistant Attorney General, Augusta, Christopher C. Taub, Six State House Station, Augusta, for Donald A Alexander, Attorney General, ME, Board of Bar Overseers, Susan Calkins, Robert Clifford, Howard Dana, J Scott Davis, Department of Attorney General, Jon Levy, Paul L Rudman, Leigh I Saufley, Defendants.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

GENE CARTER, Senior District Judge.

Now before the Court is Defendants' Motion to Dismiss the Second Amended Complaint of Plaintiff Charles Williams in his action brought under 42 U.S.C. § 1983 against the individual justices of the Supreme Judicial Court of Maine alleging the unconstitutionality of Maine Bar Rule 7.2. Docket Item. 49. Defendants make their arguments in favor of dismissal on three bases: first, that this Court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine to hear Plaintiff's claim; second, that this Court should abstain from hearing Plaintiff's claim pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny; and finally, that if the Court does reach the merits of this case, that Plaintiff's suit should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Court finds it lacks subject-matter jurisdiction under the *Rooker–Feldman* doctrine to hear Plaintiff's claims, it will dismiss the Second Amended Complaint in this action on that basis, without reaching the issue of *Younger* abstention or the merits of Plaintiff's suit.

## I. Facts

In January of 2002, the Board of Overseers of the Bar (the "Board"), commenced disciplinary proceedings against Plaintiff Charles Williams, a member of the Bar of the State of Maine. Second Amended Complaint for Declaratory and Injunctive Relief and Request for an Expedited Bench Trial (Docket Item No. 48) at ¶¶ 4,

14. On or about March 29, 2002, the Board, through Bar counsel appointed to investigate and prosecute allegations of attorney misconduct, *see* Maine Bar Rules 4(d)(1) and 5(b), petitioned the Supreme Judicial Court of Maine (the "SJC") for an immediate order temporarily suspending Mr. Williams from the practice of law in the State of Maine. *Id.* ¶ 15; Petition for Temporary Suspension, attached as Exhibit A to Defendants' Motion to Dismiss with Incorporated Memorandum of Law (Docket Item No. 17). As required by Maine Bar Rule 7.2(c)(2), Bar Counsel provided an affidavit describing the various acts of alleged wrongdoing by Mr. Williams. Affidavit in Support of Petition for Temporary Suspension, attached as Exhibit B to Mot. to Dismiss. The petition and affidavit were filed with the SJC on April 1, 2002. Exhibit A attached to Mot. to Dismiss.

On April 4, 2002, Justice Paul L. Rudman, sitting as a single justice, ordered Mr. Williams "to show cause why the petition should not be granted by filing with the Court a response to the petition of the Board of Overseers of the Bar within 10 days of the date of this Order." Order to Show Cause, attached as Exhibit C to Mot. to Dismiss. Mr. Williams did not respond to the show cause order or to the petition for temporary suspension and, on April 16, 2002, Justice Rudman granted the petition and temporarily suspended Mr. Williams. Complaint ¶ 16; Order of April 16, 2002, attached as Exhibit D to Mot. to Dismiss.

On June 24, 2002, Mr. Williams filed with Justice Rudman a motion to vacate the temporary suspension. Motion to Reconsider Temporary Suspension, attached as Exhibit E to Mot. to Dismiss. Mr. Williams argued, *inter alia*, that the Board's delay in filing a formal complaint before the SJC once he had been temporarily suspended violated his procedural due process rights. *Id.* at 40–44. Justice Rudman denied the motion. Order on Motion to Reconsider Temporary Suspension, attached as Exhibit F to Mot. to Dismiss. On July 8, 2002, Bar Counsel filed a 63–page, 276 paragraph information against Mr. Williams, alleging eighteen separate counts of violations of the Maine Bar Rules and containing 111 exhibits. Information, attached as Exhibit G to Mot. to Dismiss. On October 10, 2002, a Massachusetts Deputy Sheriff served Mr. Williams with the information. Return of Service, attached as Exhibit H to Mot. to Dismiss.

On October 7, 2002, Mr. Williams filed a complaint in this Court for declaratory and injunctive relief against the SJC, *see* Complaint for Declaratory and Injunctive Relief and Demand for Bench Trial with Application for Preliminary Injunction (Docket Item No. 1), followed on October 10, 2002, by an *ex parte* motion for a Temporary Restraining Order, asking this Court to issue a temporary restraining order "against the defendants against the further imposition and enforcement of Me. Bar. R. 7.2 against the plaintiff." *See* Plaintiff's Ex Parte Motion for Temporary Restraining Order against all Named Defendants and Complaint and Hearing on the Merits [sic] (Docket Item No. 4). This Court denied Plaintiff's *ex parte* motion for a temporary restraining order on October 18, 2002. *See* Order Denying Plaintiff's *Ex Parte* Motion for a Temporary Restraining Order (Docket Item No. 8).

Defendants filed a motion to dismiss on November 7, 2002. *See* Defendants' Motion to Dismiss (Docket Item No. 17). Plaintiff subsequently requested leave to file a First Amended Complaint, which the Court granted, and he filed his First Amended Complaint on November 27, 2002. *See* First Amended Complaint for Declaratory and Injunctive Relief and Demand for Jury Trial (Docket Item No. 27). Thereafter, explaining that he had filed a

draft complaint rife with typographical and legal errors, Plaintiff requested leave to file a Second Amended Complaint. *See* Plaintiff's First Motion to Amend Complaint with Accompanying Second Amended Complaint (Docket Item No. 35) at 3. Defendants did not object, and the Court granted Plaintiff's request. This Order addresses Plaintiff's Second Amended Complaint as representing the final statement of the Plaintiff's claims herein and the factual allegations that support those claims. *See* Second Amended Complaint (Docket Item No. 48).[1]

## II. Discussion

Because it determines the subject-matter jurisdiction of the Court, the Court will first consider the *Rooker–Feldman* doctrine, and whether that doctrine precludes this Court from exercising subject matter jurisdiction over Plaintiff's claims in this case. *See Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 75 (D.C. 1997). *See also In re Middlesex Power Equipment & Marine, Inc.*, 292 F.3d 61, 66 n. 1 (1st Cir.2002) (*quoting Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)) ("Arti-

cle III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case").

 The *Rooker–Feldman* doctrine prohibits lower federal courts from reviewing state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). This doctrine holds that pursuant to 28 U.S.C. § 1257,[2] the authority to review state court decisions is vested exclusively in the Supreme Court. *Feldman*, 460 U.S. at 476, 103 S.Ct. 1303, 75 L.Ed.2d 206. *See also Richardson v. Dist. of Columbia Court of Appeals*, 83 F.3d 1513, 1514 (D.C.Cir.1996).

 The *Rooker–Feldman* doctrine not only precludes lower federal courts from exercising jurisdiction over claims that were actually litigated in state court, but also precludes jurisdiction over claims that are "inextricably intertwined" with a state court adjudication. *Feldman*, 460 U.S. at 486–87, 103 S.Ct. at 1317. A federal claim is inextricably intertwined with a

---

**1.** The Court notes here that in addition to Defendants' original Motion to Dismiss, they also filed motions to dismiss Plaintiff's First Amended Complaint, *see* Defendants' Motion to Dismiss First Amended Complaint, with Incorporated Memorandum of Law (Docket Item No. 28), and Plaintiff's Second Amended Complaint. *See* Defendants Motion to Dismiss Second Amended Complaint, with Incorporated Memorandum of Law (Docket Item No. 49). Both the Motion to Dismiss the First Amended Complaint and the Motion to Dismiss the Second Amended Complaint state that none of the new allegations made by Mr. Williams in his two amended complaints bear on the arguments made in Defendants' original Motion to Dismiss. Therefore, Defendants have incorporated by reference the arguments made in their original Motion to Dismiss. *See* Def. Mot. to Dismiss Second Amended Complaint at 2, 3. Because the Second Amended Complaint raises no new alle-

gations and Defendants have not made any corresponding new arguments in their third Motion to Dismiss, and because the principal complaint of Mr. Williams has remained that there is an excessive delay in finally adjudicating his case, the Court will not wait for Plaintiff to file a third Response before issuing this opinion. For this reason, the Court will also refer to Plaintiff's original Motion in Opposition to Defendants' Motion to Dismiss when discussing Plaintiff's arguments as to why the Court should hear his suit. *See* Plaintiff's Consolidated Motion in Opposition to Defendants' Motions to Dismiss Pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6) (Docket Item No. 26) ("Opp. to Defs' Mot. to Dismiss").

**2.** 28 U.S.C. § 1257 reads: "final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court."

state court judgment where the success of the federal claim means effectively voiding the state court judgment. "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring).

Courts have interpreted *Rooker*–Feldman to further preclude lower federal court jurisdiction over adjudications of lower state courts—not just the highest court of a state—and over non-final adjudications. *See Hill v. Town of Conway*, 193 F.3d 33, 40 (1st Cir.1999) (*quoting Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey Police Dept.*, 973 F.2d 169, 178 (3rd Cir.1992) ("[T]he *Rooker*–Feldman doctrine precludes review of lower state court decisions, just as it precludes review of the decisions of a state's highest court"); *see also Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir.2002); *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir.1997) ("The *Rooker*–Feldman doctrine is in no way dependent upon the temporal procedural posture of the state court judgment . . . ."); *Port Authority Police Benev. Ass'n*, 973 F.2d at 177 ("[I]f federal district courts are precluded, as they are, from reviewing the decisions of a state's highest court, even when those decisions appear to the district court to have been plainly in violation of the Constitution, then federal district courts are certainly also precluded from reviewing decisions of lower state courts . . . ."); *Keene Corp. v. Cass* 908 F.2d 293, 297 (8th Cir.1990) (*citing Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n. 3 (9th Cir.1986); *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir.1986)) ("We agree with the decisions of other circuits holding that the *Feldman* doctrine applies

to state court judgments that are not yet final").

In *Richardson v. Dist. of Columbia Court of Appeals,* the Court of Appeals for the District of Columbia Circuit specifically held that under the *Rooker*–Feldman doctrine, a federal district court is precluded from reviewing a state court decision, whether it is interlocutory or final, to temporarily suspend one of its bar members. *See Richardson*, 83 F.3d at 1514–15. The plaintiff in *Richardson*, like Mr. Williams in the instant case, was temporarily suspended from the practice of law by the D.C. Court of Appeals. The court found, however, that the temporary suspension was "final" for purposes of section 1257. In reaching its decision, the *Richardson* court stated that "the issue is legally entirely separate from any claims to be resolved in the substantive disciplinary proceedings that appear destined to follow; it has been finally resolved by the D.C. Court of Appeals; and it cannot be cured by any remedy given at the end of the substantive proceedings." *Richardson*, 83 F.3d at 1514–15. The court went on to find that even if the order were *not* final for purposes of 1257, the district court would have nonetheless lacked jurisdiction. In explaining this finding, the court stated that it could not "imagine how one could reconcile *Feldman's* reasoning, based as it is on allowing state courts to arrive at decisions free from collateral federal attack, with the idea that the district court would be free to review Richardson's suspension so long as the decision was interlocutory." *Id.* at 1515.

Significantly, the *Rooker*–Feldman doctrine bars review only of those state court decisions that are judicial in nature. *Feldman*, 460 U.S. at 476, 103 S.Ct. 1303. The *Rooker*–Feldman doctrine may allow a federal district court

jurisdiction to review a challenge to a general bar rule promulgated—as opposed to applied—by a state court in a non-judicial capacity.[3] *Richardson,* 83 F.3d at 1515. Because a district court confronted with a simple challenge to the validity of such rules "is not reviewing a state-court judicial decision," it has subject matter jurisdiction over such a challenge. *Stanton* 127 F.3d at 75 (*quoting Feldman,* 460 U.S. at 486, 103 S.Ct. at 1317). However, general challenges to the constitutionality of a bar rule are not *always* reviewable: "even a constitutional claim pled as a general attack may be so 'inextricably intertwined' with a state court decision that 'the district court is in essence being called upon to review the state-court decision.'" *Id.* (*quoting Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1316 n. 16). This, a federal district court may not do.

■ Here, Mr. Williams claims to be asserting a facial challenge to the constitutionality of Maine Bar Rule 7.2. Opp. to Defs' Mot. to Dismiss at 8, 11. This Court must determine whether Mr. Williams is indeed asserting such a facial challenge, which is capable of being extricated from the state court disciplinary proceedings and resulting suspension decision, or if in fact he is seeking to have this court conduct a review of the state court's decision on the issues before it. In *Feldman* itself, plaintiffs, who had not graduated from ABA-accredited law schools, attacked both the general rule promulgated by the District of Columbia Court of Appeals that required all bar applicants to have graduated from such an accredited law school, and the particular decision of the District of Columbia Court of Appeals to deny their request for a waiver of this rule. Although the Court found that the District Court did not have jurisdiction over the latter attack because the allegations made therein were "inextricably intertwined" with the decision of the District of Columbia Court of Appeals to deny the requests for waivers, the Court found that the District Court did have jurisdiction over the general attack on the constitutionality of the rule. *Feldman,* 460 U.S. at 486–87, 103 S.Ct. at 1317. It found that "the core of plaintiffs' generalized challenge was independent of the specific decision to deny a waiver." *Richardson,* 83 F.3d at 1515.

Several cases dealing with the issue of whether a constitutional claim in federal court is "inextricable" from one raised in state court are instructive in ruling upon the instant motion. In *Patmon v. Michigan Supreme Court,* 224 F.3d 504 (6th Cir.2000), the Court of Appeals for the Sixth Circuit found the plaintiff to be making a claim that was inextricably intertwined with the state judicial proceedings. *Id.* at 510. The plaintiff in *Patmon* was suspended from the practice of law in Michigan, and after a series of unsuccessful actions in the state court system contesting his suspension, he filed a section 1983 action in federal district court against the Michigan Supreme Court, the Michigan Attorney Grievance Commission, the Attorney Discipline Board, the State Bar of Michigan, and various other offi-

**3.** The Supreme Court in *Feldman* explained that:

> A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter

or all or some part of those subject to its power.

*Feldman,* 460 U.S. at 477, 103 S.Ct. 1303, 75 L.Ed.2d 206. The Court further held that "[w]e have recognized that state supreme courts may act in a non-judicial capacity in promulgating rules regulating the bar." *Id.* at 485, 103 S.Ct. at 1316.

cials affiliated with these entities. *Id.* at 505–06. The plaintiff in *Patmon* argued that his complaint was "a general constitutional attack on the constitutionality of the Michigan attorney discipline sanction proceedings/process," and that therefore the district court had jurisdiction over his suit. *Id.* at 509. The court noted plaintiff's argument that he was making a general constitutional challenge, but concluded that "a reading of his complaint reveals that the core of his constitutional claims is a challenge to the State of Michigan's application of the rules to him. Plaintiff's complaint alleges that certain rules of practice violate the Constitution, but only explains how they did so when applied to him." *Id.* at 510. The court cites as an example plaintiff's allegation that the rules violate liberty and property rights, but then points out how plaintiff "demonstrates that they do so by complaining about the loss of his reputation and the capricious targeting of his case." *Id.*

This is precisely what Mr. Williams has done in the instant case. Aside from asserting what the Court understands to be his facial challenge—that 7.2 does not provide for any prompt post-deprivation process nor for any right of appeal or review—his only discussion or development of this claim pertains to the particular actions of defendants in his case, and the effect these actions have on him. When

Mr. Williams asserts in his Second Amended Complaint that Maine Bar Rule 7.2 facially does not allow for a prompt post-deprivation hearing or an appeal of a temporary suspension, Second Amended Complaint ¶¶ 71–72, he demonstrates the unconstitutional nature of the rule by complaining of his inability to pay rent while he is suspended, *id.* ¶ 73, the imminent eviction he faces, *id.* ¶ 74, his likely inability to save his business interests, *id.* ¶ 75, and the clients who have informed him that they will seek other counsel if he continues to be unable to practice in Maine. *Id.* ¶ 76.

■ Although Mr. Williams asserts in his Opposition to the Defendants' Motion to Dismiss that the present action is not inextricably linked to the decision to temporarily suspend him, he goes on to explain this argument by claiming that his challenge concerns "the delay caused [him] and maintained by the defendants and their agents." Opp. to Defs' Mot. to Dismiss at 17. He further asserts that "[t]he attack centers on the fact that the defendants, despite their protestations, have no valid explanation for the seven month delay in providing a final determination of the underlying ethics complaints."[4] *Id.* Mr. Williams contradicts his own argument that his facial claim is separate by citing facts particular to his case in support of the argument. Such an exposition

---

4. The Court notes that to the extent that Plaintiff claims to suffer prejudice from the "unreasonable delay" promoted by the Single Justice in failing to give him a final date for a hearing in his case, Second Amended Complaint ¶¶ 26, 59, 121, this argument is undermined by the fact that Plaintiff himself is the cause of the present delay. It was Plaintiff that requested—and obtained—a stay of the pending state court disciplinary proceedings. Moreover, it should be noted that through no fault of the state court, for some unexplained reason the Sheriff's Department did not succeed in serving Mr. Williams until October of 2002, although the complaint was filed three months earlier in July. Nevertheless, Defendants assert that Mr. Williams had notice of the complaint as early as the beginning of August 2002, because they attached it in a brief filed and served in a lawsuit similar to this one brought by Mr. Williams in the United States District Court for the District of Massachusetts. Mot. to Dismiss at 7; Defendant's Opposition to Motion for Preliminary Injunction (dated August 6, 2002) in Massachusetts litigation at 6, attached as Exhibit I to Mot. to Dismiss.

of these specific facts "hardly would have been necessary if the district court were being asked only to assess the validity of the rule in its general application." *Stern v. Nix,* 840 F.2d 208, 212 (3d Cir.1988) (internal punctuation omitted). Indeed at another point in his opposition memoranda, Mr. Williams admits that this is an as-applied challenge he is presenting: "a determination of the, 'as applied,' challenge is not inextricably linked to the facts which relate to the initial imposition of the temporary suspension under 7.2." *See* Opp. to Defs' Mot. to Dismiss at 17. However, an as-applied challenge by definition means examining the rules and their effect on the particular facts of his case. As the Supreme Court emphasized in *Feldman,* federal district courts "do not have jurisdiction ... over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Feldman,* 460 U.S. at 486, 103 S.Ct. 1303. Any as-applied challenge Mr. Williams makes will require this Court to reexamine the facts of his case and review a prior state judicial determination, which is prohibited. *See id.*

In *Wilson v. Shumway,* 264 F.3d 120 (1st Cir.2001), the plaintiff claimed in his federal suit to be making general constitutional challenges to New Hampshire's procedure for permitting a guardian to authorize the involuntary administration of anti-psychotic drugs to a ward. *Id.* at 124. Specifically, the plaintiff asserted that the involuntary medication scheme lacked three constitutionally required features: (1) notice that such a recommendation will be made, with legal and factual reasons for the recommendation explicitly provided; (2) notice of a right to a hearing before an impartial arbiter in which the need for medication must be proven beyond a reasonable doubt; and (3) notice of the right to be represented by counsel at the hear-

ing. *Id.* The plaintiff in *Wilson* emphasized that he was not contesting the appointment of a guardian by the probate court; instead, he argued that the statutory scheme relating to involuntary medication lacked constitutionally-guaranteed procedural due process mechanisms. *Id.* In *Wilson,* the Court of Appeals for the First Circuit found that despite the plaintiff's characterization of his claims as general constitutional challenges, an examination of the plaintiff's amended complaint revealed that "[t]he substance of [plaintiff's] claims reference the personal circumstances of his case." *Id.* at 125.

Although Mr. Williams asserts in his Opposition to Defendants' Motion to Dismiss that the purpose of his Second Amended Complaint is to remove all references to the specific facts in his case so that his complaint "squarely attacks the scheme offered by the defendants under 7.2 facially and as applied," Opp. to Defs' Mot. to Dismiss at 11, his efforts to show the facial attack are unsuccessful. Mr. Williams's line of argument mirrors that of the plaintiff in *Wilson.* In his Opposition to Defendants' Motion to Dismiss Mr. Williams argues that he is not contesting his suspension by the state court, but is challenging Rule 7.2's facial scheme relating to the attorney disciplinary process as constitutionally inadequate. He argues that this Court can grant his claims for relief "without making a finding that the underlying suspension was as a matter of fact, wrongfully decided." *Id.* at 12. However, after exhaustive review of Mr. Williams's Second Amended Complaint and his memorandum in support of his Opposition to Defendants' Motion to Dismiss, the Court finds that Mr. Williams is unable to articulate this facial challenge at all without reference to the circumstances of his own personal situation, and that

what he in essence asks of this Court is to have his temporary suspension vacated.[5]

Many courts have noted that the relief sought by a plaintiff may belie his or her claim that a general constitutional challenge is being put forth. In *Stern v. Nix*, the court found that despite the plaintiff's "genuflecting to the *Rooker–Feldman* doctrine, closer consideration convinces us that [plaintiff's] complaint is simply a skillful attempt to mask the true purpose of the action," that is, to reverse the decision of the Pennsylvania Supreme Court. *Stern*, 840 F.2d at 212. The *Stern* court found to be of particular import to their decision the fact that the plaintiff sought a declaratory judgment and a permanent injunction restraining the Supreme Court of Pennsylvania from disbarring him "and other similarly situated attorneys." *Id.* The Court of Appeals for the Third Circuit stated "[t]his demand for a permanent injunction, while drafted to sound like a remedy for a general challenge, is in itself problematic. In a sense, any attempt to enjoin the enforcement of a state court judgment, even conditionally . . . is suspect." *Id.* The court added that the fact that the plaintiff purported to act on behalf of other similarly situated attorneys "does not change the fact that he is essentially seeking the reversal of his own judgment." *Id.* The court found that granting the plaintiff's request would be to overrule the state court judgment, an act contrary to *Rooker–Feldman*. *Id. See also Patmon*, 224 F.3d at 510 (plaintiff's requested injunction remedy would require the federal district court to review a prior state judicial determination).

■■■ Here Mr. Williams also requests that a preliminary injunction be issued. Specifically, he requests an order lifting his suspension, Second Amended Complaint at 22 ¶ 1, an order compelling the Defendants to notify all courts throughout the state of Maine, whether state, federal and/or administrative courts that he [sic],[6] *id.* ¶ 2, an order finding that Maine Bar Rule 7.2 is unconstitutional both as stated and as applied to the Plaintiff within this case, *id.* ¶ 3, an order enjoining the application, use, and continued use of Maine Bar Rule 7.2 against all persons similarly situated as the Plaintiff, *id.* ¶ 4, an order directing the Law Court to publish a written apology to him in the Atlantic Reporter and other publications, *id.* ¶ 5, an order directing that an apology be read to Plaintiff in special public session by the Chief Justice of the Supreme Judicial Court, *id.* ¶ 6, an order directing the Maine Supreme Judicial Court to render any statutory, regulatory or other non-monetary aid and assistance to help Plaintiff rebuild his practice in Maine, *id.* at 22–23 ¶ 7, and an order directing the Defendants "to institute a rulemaking to create procedural rules which comply with the finding of this Court" *id.* at 23 ¶ 8. These are all requests for relief that are particular to plaintiff, and would require this Court to overrule the decision of the Maine Supreme Judicial Court to temporarily suspend Plaintiff. Like the plaintiff in *Stern*, by claiming he is acting on behalf of all other similarly situated attorneys in requesting that the

---

**5.** Out of the 123 paragraphs in his Second Amended Complaint, the following paragraphs all discuss the specific facts of Mr. Williams's case and the personal prejudice he has purportedly suffered as a result of the allegedly unconstitutional actions of the state officials: ¶¶ 23–26, 47, 50, 52–60, 67–70, 73–76, 78–106, 108, 110–118, 120–123.

**6.** Mr. Williams does not finish his sentence in his Second Amended Complaint with regard to this particular request for relief, but nevertheless, it is clear to the Court that whatever relief he is requesting here is specific to him.

Court enjoin any further use of Rule 7.2, *see id.* ¶ 4, and by asking to have Rule 7.2 struck down as unconstitutional, *see id.* ¶ 3, he attempts to paint his challenge as a general one. But even these requests for relief, while seemingly general at first glance, would require this Court to abrogate the state court judgment to temporarily suspend Mr. Williams, and this the Court lacks jurisdiction to do. Although he does make general allegations of facial invalidity, the context of Mr. Williams's Second Amended Complaint shows that his arguments concern how the rules were applied to him, and do not truly present a facial constitutional challenge. "His constitutional claims are therefore inextricably intertwined with the state judicial determinations of his case." *Patmon,* 224 F.3d at 510.[7] The particularized relief sought by Mr. Williams plainly illustrates that he is seeking to overturn the state court decision to suspend him which the *Rooker–Feldman* doctrine precludes.

Finally, the Court notes that in their Motion to Dismiss, Defendants also argue that the Court should abstain from hearing Plaintiff's suit pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny. *See* Mot. to Dismiss at 16. However, a federal court cannot engage in an abstention analysis if it does not have subject matter jurisdiction in the first place. *See Pennzoil,* 481 U.S. at 23, 107 S.Ct. 1519, 95 L.Ed.2d 1 (Marshall J., concurring) ("There is no occasion to decide if abstention would have been proper unless the District Court had jurisdiction"); *see also Bass v. Butler,* 224 F.Supp.2d 950, 960 n. 11 (E.D.Pa.2002) ( [I]f subject matter jurisdiction does not exist in the first place, abstention or preclusion analysis would be inappropriate and unnecessary."). Therefore, because this Court has made the threshold determination that it does not have jurisdiction to hear this case under the *Rooker–Feldman* doctrine, it will not decide whether it may also abstain on *Younger* grounds.

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss the Second Amended Complaint be, and it is hereby, **GRANTED,** and that the Second Amended Complaint be, and it is hereby, **DISMISSED.**

---

7. Even if a facial challenge could legitimately be read from his complaint, the Court notes that Plaintiff's challenge would nonetheless fail. As the Supreme Court has indicated, "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *U.S. v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). While this "no set of circumstances" test has come under question in recent years, the Court of Appeals for the First Circuit has continued to endorse its application, and therefore this is the test that must be employed when examining Plaintiff's claim. *See Pharm. Research and Mfrs. of Am. v. Concannon,* 249 F.3d 66, 77 (1st Cir.2001); *see also id.* at 94–95 (Keeton, J., concurring); *Doe v. Rowe,* 156 F.Supp.2d 35, 49 (D.Me. 2001). Under this strict test, given that Plaintiff has done no more than make the conclusory assertion that Maine Bar Rule 7.2(c) "imposes no duty, obligation, or other responsibility upon either the Board of Overseers, Bar Counsel ..., the Supreme Judicial Court ..., and/or the Maine Department of Attorney General to provide prompt post-deprivation final judgment, hearing or trial" and that it "on its face disallows any right of appeal or other remedy for erroneous imposition of any suspension or other discipline" Second Amended Complaint at 3–4, ¶¶ 17–18, and only supports this assertion with the particular facts of his case, it is clear that Plaintiff has not even begun to demonstrate that there is *no set of circumstances* under which Rule 7.2(c) could be constitutional.